————o————

AMOS LUNSFORD, Respondent, *vs.* LA MOTTE LEAD Co., Appellant.

1. *Leases—Mining—Regulations—License to continue mining.*—In 1838, the proprietors of mine La Motte promulgated certain rules and regulations for the miners, who by signing them had a right to mine and extract minerals under their provisions for ten years. At the expiration of this time the proprietors made an agreement, by which miners might continue operations by subscribing thereto, on condition—among others named—that the agreement was to be revocable by the future action of the proprietors. *Held,* that the agreement was not a lease but a license, revocable at the pleasure of the proprietors. And where the miner, after the license was revoked, resumed work and extracted mineral without the consent of the proprietors, he was a mere wrong doer and acquired no title to the mineral by such wrongful act.

2. *Deeds—Seal—Scrawl—When necessary—Intention of parties.*—Where a deed purports to be executed under the hands and seals of all the parties, and is acknowledged as the deed of all, it is not necessary that a separate seal shall be placed opposite each name. If it appears that the seal affixed is intended to be adopted as the seal of each, it is sufficient.

*Appeal from St. Francois Circuit Court.*

*B. B. Cahoon, & Jno. F. Bush,* for Appellant.

I. The two scrawls, following the names or signatures to the deed, were a sufficient sealing of the deed for all the parties or grantors. In the absence of explanatory evidence the law imputes or attributes one of the two seals to Radcliffe B. Lockwood, and the other to William A. Scott, and Amelia Scott, his wife. (Tasker vs. Bartlett, 5 Cush., [Mass.] 359; Bowman vs. Robb, 6 Barr., 302; Bohannons vs. Lewis, 3 Mon-

roe, [Ky.] 378; Towsend vs. Hubbard, 4 Hill, [N. Y.] 357; Ball vs. Dunsterville, 4 Term, 313; Mackay vs. Bloodgood, 9 Johns., 285; Perkins Conv., 59-134; Washb. Real Prop., 570; 1 Shep. Touch. [Am. Ed.], p. 56-7; Stark. Ev., 508.)

*W. H. Nalle & M. L. Clardy*, for Respondent.

VORIES, Judge, delivered the opinion of the court.

This suit was brought in the Madison Circuit Court, and afterwards removed to the county of St. Francois, by change of venue. The action was in the nature of an action of trover and conversion.

The petition stated, that the defendant was a corporation organized under the laws of this State; that on or about the first day of June, 1870, defendant by its agents and servants unlawfully and willfully took, and carried away, one hundred and fifty thousand pounds of blue mineral or sulphuret of lead, the personal property of plaintiff, of the value of thirty dollars per thousand pounds, and converted the same to defendant's use, without the consent of plaintiff.

The petition further states, that by virtue of a written lease signed by the proprietors of the Mine La Motte or their agents, lawfully authorized, he was in possession of a tract or lot of mining ground, that is, one log house, one and one-half stories high, together with the appurtenances thereto, and a certain lot of ground formerly occupied by Christ. Belten, and bounded on the south by a lot formerly occupied by Bais & Co., the same being known as the "Lunsford Shaft," or the "Sulphuret Lead," being a part of the Mine La Motte tract of land situated in the counties of Madison and St. Francois; that as said lessee he had dug from and mined the said ores from said ground and placed them in the usual manner at the mouth of the shaft preparatory to having them hauled away and prepared for smelting; that the defendant through its agents and managers obtained from the judge of the Circuit Court at chambers an injunction restraining plaintiff from further mining in said shaft; that, after the issuing of said injunction, the defendant committed the trespass first charged.

Judgment is prayed for four thousand four hundred dollars.

The defendant in its amended answer denies all of the material allegations in the petition, except that it is a corporation organized under the laws of this State, and for another and other defense it states, that at the time of the supposed trespass and conversion of said mineral the defendant was the owner with the immediate right of possession of said mineral, and was the owner and had the right to the immediate possession of the said premises from which said minerals were dug, before and during the time of the pretended raising and extracting of said mineral from said premises by plaintiff; and that plaintiff at said time had no right whatever to the possession of said premises or to mine or remove mineral therefrom; and that any occupation of said premises or taking of minerals therefrom by plaintiff was a mere trespass upon the rights of the defendant, and for further defense defendant stated that plaintiff's claim, right or title to said minerals was the subject matter of and in issue in a cause which R. B. Lockwood & William Scott, from whom the defendant derives title to the premises which the petition describes, as plaintiff's, brought in the Madison Circuit Court against said plaintiff, being an action to enjoin said Lunsford from mining said premises, and for other purposes; that since the commencement of this action the proceedings to enjoin said Lunsford have been heard and determined by said court, and the claim which the plaintiff presents in this action, and his right to said minerals and premises, fully adjudicated; that such adjudication was had in September, 1871, and that the same was against the claim and title of plaintiff to said premises and mineral sued for in this action.

The defendant also sets up as a defense to this action, that before the commencement of this suit, and before plaintiff had dug and raised the mineral sued for, one Radcliffe B. Lockwood, who was at the time the owner in fee of the premises from which the minerals were taken, had commenced an action for unlawful detainer against said plaintiff to recover the possession from said plaintiff of the premises from which said minerals were taken or mined; that in the month of

September, 1869, said Lockwood recovered a judgment against said plaintiff for the possession of said premises, and that said minerals sued for were wrongfully mined and taken from said premises after such judgment and before the writ for the possession of said premises issued thereon was executed by the officer in possession thereof; that defendant purchased said premises of said Lockwood, and after said purchase said minerals were mined and raised without its consent, and in defiance of its rights, etc.

The defendant also set up several other defenses which it is not necessary to notice. The plaintiff filed a replication denying the new matter set forth in the answer.

A trial was had in the Circuit Court before a jury. The jury after hearing the evidence returned a verdict for the plaintiff for the sum of four thousand dollars.

The defendant filed a motion for a new trial, which being overruled it excepted and has appealed to this court.

The record in this case contains over two hundred pages, and is filled with exceptions taken by the parties to the various rulings of the court during the progress of the trial. The instructions alone, to which exceptions are taken by the parties, cover twenty-two pages of the record; but with the view which I have taken of this case, it will only be necessary to notice a few points urged by the parties in this court.

It appears from the bill of exceptions, that there is a large tract of land situate in the counties of Madison and St. Francois in this State, which is known by the name of the "Mine La Motte Domain;" that the lands are mining lands; that in May, 1838, the owners of this tract of land, for the purpose of facilitating mining thereon, promulgated a set of rules and regulations for the government of their agent, who was to take charge of the mining operations, as well as for the government of those who should work the mines and take minerals therefrom. Each person who proposed to extract minerals from these lands was required to stake off the ground on which he proposed to work, and place objects at the corner, so as to plainly designate the land to be worked, and was compelled

to sign his name to the rules and regulations promulgated. These rules by their terms were to go into operation on the 6th day of August, 1838, and it is agreed by the parties, that they were by their terms to expire in ten years from that date. Portions of these rules and regulations were read in evidence by the plaintiff on the trial of the case, and are as follows: "Article 1st. It shall be the duty of the agent of the La Motte Mines and property to attend to the fulfillment of the following rules and regulations established for the interest of all whom it may concern."

"Article 2nd. Persons desirous of mining, smelting, or transacting business, within the limits of the La Motte Domain, are requested to inform the agent of their intention. No person shall be permitted to commence operations without having his name to these laws."

Articles one and three of the second sub-division of these rules and regulations read as follows:

"Of Smelting." "Article 1st. All ores found or extracted within the limits of the La Motte property shall be smelted upon said premises without contrary permission from the agent."

Article 3rd. No grant or permission will be delivered, thereby empowering a person or persons to the privilege of smelting under these formalities, without such person or persons previously give bond conditioned with a penalty, and approved security, the refusal or acceptance of such security being at the option of the agent. The further condition of said bond shall be, a faithful account of the whole quantity of lead made shall be kept, and that he or they shall deliver or cause to be delivered to an appointed place, or warehouse located on the premises, ten pounds of merchantable lead out of every hundred pounds made; such one-tenth being the property, rent or tax, due the company from those enjoying these privileges."

The signature of plaintiff is to these rules, but it is not shown at what time his name was subscribed.

The plaintiff also read in evidence from a book, called

"Register of Mine La Motte No. 3," the following entries: "1848, Aug. Those, whose signatures are hereto annexed, are permitted to mine upon the Mine La Motte Domain, and raise any mineral contained under the surface thereof, conditionally that they sell no ores thus raised to any other persons than such as will smelt the same on the said domain. This agreement to be subject to, and revocable by, future action of the proprietors."

This register is signed by the agent of the proprietors, and it was shown that on pages succeeding plaintiff's name was signed, not in his own handwriting but by his authority, thus, "Amos Lunsford, 1853," August 9, 1856, Amos Lunsford."

Then the plaintiff, for the purpose of showing that the regulations under the "Register No. 3" still continued to be used in the year 1869, showed, that in said book, after several blank leaves intervening between all other entries on the book and the one to be read, the name of the plaintiff appeared thus, "1869 Feb'y 16, Amos Lunsford & Co." This last signature was proven to have been taken from Lunsford at a school house, and was by his authority put on the book by a man who was only agent for a part of the proprietors and owners of the mine.

The evidence shows, that plaintiff together with two or three partners commenced in the month of February 1869 to take mineral out of the "Lunsford shaft," and between that time and the month of June in the same year took from said shaft several thousand dollars worth of mineral.

In June 1869, Floming and others, owners of the mining lands, being about to sell out their lands, which included the lot in which the Lunsford shaft was sunk, gave Lunsford and other miners on the La Motte Domain notice to cease mining, and yield up the possession of the lands used and mined by them to the owners of the land.

When this notice was given, the miners all ceased work and abandoned their shafts, except one company which remained for awhile with the consent of the proprietors.

Lunsford's partners abandoned the Lunsford shaft finally, and do not claim to have had any interest in the mine since.

Lunsford himself ceased mining, but gathered up and took care of the ore already mined. After the Lunsford shaft had thus remained unused from June until October 1869, Radcliffe B. Lockwood, a part owner of Mine La Motte, having contracted to sell his interest in said lands to the defendant, and being desirous to have plaintiff quit the possession of the house in which he lived and the improvements connected therewith, again demanded the possession thereof in writing, and commenced a suit against him of unlawful detainer, after which plaintiff again commenced to dig and raise mineral out of the Lunsford shaft, and continued to so take the mineral from said shaft and deposit the same at the mouth thereof for some ten or twelve days, at which time he was enjoined from further operating said mine or shaft. After this injunction the defendant by its agent, it having as it claimed become the owner of the "Mine La Motte Domain," which it claimed to have purchased before the mineral sued for had been taken from the mine, took possession of the whole tract of land including the "Lunsford shaft," and carried away and converted the mineral extracted from said shaft by plaintiff in the month of October, 1869.

During the trial of the case before the Circuit Court the defendant, in order to show its title to the land and mineral, read in evidence several deeds of conveyance, by which said lands or interest therein were conveyed to it, and then offered to read in evidence a deed which purported to have been executed by one Radcliffe B. Lockwood, and by one Scott and his wife. This deed purported to convey to defendant a large and controlling interest in said tract of land, and was necessary to complete defendant's title thereto.

The deed was objected to by the plaintiff, on the ground that it was not under seal so far as Lockwood was concerned. The deed purported to have been executed under the hands and seals of all three of the grantors, but it had only two scrawls or seals placed opposite the names of the parties as they were subscribed to the deed; and these were placed opposite to the names of Scott and wife, and none placed oppo-

site to the name of Lockwood. The court sustained the objection made to the deed, and refused to permit the defendant to read it in evidence as the deed of Lockwood, but permitted it to be read as the deed of Scott and wife.

To this action of the court the defendant excepted. The defendant had by other deeds shown that portions of the interest or title on the land had been vested in it, but the exclusion of this deed left a large undivided interest or title to the land outstanding. . Other evidence was given by the defendant tending to prove its title to the land and mineral, which need not be here referred to. The plaintiff claims that he was in the lawful possession of the mining shaft by virtue of having subscribed the rules and regulations of the proprietors of the land, that he by signing the same became their tenant -or lessee and as such was in possession of the shaft, and that when he extracted the mineral it became his property, and that he had therefore a right to recover against the defendant for its conversion, even if it should be proved that the defendant was the owner of the land where the shaft was made.

The defendant claims, that the plaintiff was working in the mines under a revocable license, and that the license was revoked in June, 1869, by the notice served on him at that time by the proprietors of the land, in which the plaintiff and his partners acquiesced for several months; and that therefore, when he commenced in October, 1869, to take out mineral against the will of the owners, he was a mere wrong doer and could not by his wrongful act acquire any title in the mineral so wrongfully extracted against the owners of the land, that the mineral so extracted still remained the property of the owners of the land.

The right of the plaintiff to extract and hold the mineral sued for must depend on the construction of the regulations and agreement under which he was mining, and under which he claims title.

The rules promulgated on the 19th of May 1838, and which took effect on the 6th of August 1838, expired on the 6th of

August 1848, unless they were continued in force by the after action of the parties; so that, we must ascertain, by what was done after that time or at their expiration, how and by what right the plaintiff held and worked the "Lunsford shaft" in 1869. It will be seen that in August 1848, just at the time the first rules promulgated were to expire, the "Register of Mine La Motte No. 3" was adopted by the agent of the company, and agreed to by such miners as subscribed the same. The plaintiff claims to have subscribed and agreed to this register at different times. It is to be supposed that these different signings related to different shafts or mines staked out by the plaintiff at different times; but he only read parts of the regulations in evidence. It cannot therefore be clearly seen what was the object of these different signings by the plaintiff.

The mining register seems to have been a regulation, made between the agent of the proprietors of the mines and those mining on the land at the expiration of the first regulations promulgated by the proprietors in 1838.

That part of the register read in evidence by the plaintiff reads as follows: "1848 August. Those, whose signatures are hereto annexed, are permitted to mine on the Mine La Motte Domain, and raise any mineral contained under the surface thereof, conditionally that they sell no ores thus raised to any other person than such as will smelt the same on the said domain. This agreement to be subject to, and revocable by, the future action of the proprietors."

This was signed by the agent of the proprietors and by the plaintiff. To properly construe this instrument, we must keep in view the circumstances under which it was executed.

The proprietors had first promulgated rules and regulations for the miners, who, by signing the same, had a right to mine and extract minerals under their provisions for the term of ten years after August 1838. At the expiration of this time the agent of the proprietors made an agreement, called the Register No. (3), by which miners might continue to mine and open mines by subscribing this register or agreement, upon

the condition therein stated. One of these conditions was, that the agreement was to be revocable by the future action of the proprietors.

The plain construction of this agreement seems to me to be, that it was a revocable license, to be revoked at the pleasure of the proprietors of the land, and was not, as contended by the plaintiff, a lease. It was a mere permission to work the mines for an unlimited time, to be revoked by the proprietors at their pleasure. Such a license might be revoked at any time, and this seems to have been the understanding of the miners who signed the agreement, for it appears by the evidence that, out of over twenty miners working mines under this agreement in June, 1869, all ceased to work or claim any further right to work or extract ores from the mines after being notified to quit by the owners of the land in June, 1869; and in fact the plaintiff and his partners, on being notified to quit in June, 1869, ceased work, and the partners never resumed work or claimed any further right in the mines after that time. But the plaintiff in the next October, for some reason, resumed work and claimed the right to exhaust the mineral from the shaft where he had worked by virtue of his old license or agreement. After the plaintiff had been notified in writing by the owners of the land to quit working the mine, and yield up the possession of the land, in June, the license ceased, was revoked, and when he afterwards in the October following resumed work and took out minerals without the consent of the owners of the land, he was a mere wrong doer, and acquired no title to the mineral by such wrongful act.

The title to the minerals thus wrongfully extracted remained in the owners of the land. And it was the duty of the court to so tell the jury by a proper instruction. The main error of the court, however, was in excluding the deed offered in evidence by the defendant to show that it had acquired the title of Lockwood and Scott to the land from which the mineral had been extracted.

The deed was excluded as the deed of Lockwood, and as to

his interest in the land, and the jury were instructed that the plaintiff could recover as to said interest, for the reason that the title to that extent was not shown to have passed to, or vested in, the defendant.

The case was tried upon the theory that the defendant had shown no title to Lockwood's interest in the land, and that therefore the plaintiff could recover for the mineral to that extent.

This deed ought to have been admitted in evidence. It purported to have been executed by all of the grantors. Two seals or scrawls were placed at the end of their names. It is true, that neither of the scrawls was placed opposite the signature of Lockwood, but the deed purported to have been executed under the hands and seals of all of the parties, and was acknowledged as the deed of all.

In such case, it is not necessary that a separate seal should be placed to each name. If it appears that the seal affixed was intended to be adopted as the seal of each, it is sufficient. See the opinion of Walworth, Justice, in the case of Townsend vs. Hubbard, 4 Hill, (N. Y.) 351 ; Tasker vs. Bartlett, 5 Cush. (Mass.) 359 ; Stark. Ev., by Sharswood, 508, and authorities there cited.

There are a great many other points made in the case, but the points referred to and passed on are sufficient to dispose of the case.

Judge Adams not sitting, the other judges concurring, the judgment is reversed, and the case remanded.