Burnett v. McCluey.

BURNETT v. McCLUEY, *Appellant.*

1. **Deed:** ERASURE: PRESUMPTION. The law presumes an erasure in a deed to have been made before its execution, and imposes the burden of proof on him who asserts the contrary.

2. ———: ———. An erasure or alteration in the description of one of several tracts of land embraced in a deed, made after delivery of a deed, will not affect its validity as a conveyance of the other tracts.

3. ———: SEAL. Where a deed declares that the grantors have affixed their seals, but no seal appears opposite the names of one or more of them, it will be presumed that they adopted those opposite the other names.

4. **Married Woman's Deed:** ACKNOWLEDGMENT. A certificate of acknowledgment to a married woman's deed, made in 1875; *Held,* to be defective because it failed to state that she was made acquainted with the contents of the deed.

5. **Sheriff's Deed:** ATTACHMENT: EVIDENCE. A sheriff's deed in attachment proceedings taken without the statutory affidavit is void; and where the record shows no finding that the writ of attachment was duly issued, the court files may be read in evidence to determine whether there was such an affidavit or not, and if none appear, then parol evidence is admissible on the one hand to show that some of the files have been lost or destroyed, and on the other that files alleged to be lost or destroyed, never existed.

6. **Deed:** DESCRIPTION: CALL FOR QUANTITY. A deed described the property conveyed as the " north half of the southwest quarter the southwest quarter of section 6." *Held,* that it should be construed to convey the north half of the southwest quarter *of* the southwest quarter of section 6, especially as the call for quantity supported this construction.

*Appeal from Dade Circuit Court.*—HON. J. D. PARKINSON,
Judge.

REVERSED.

The testimony of Nathaniel Bray on behalf of plaintiff was as follows : . I did know of the suit of Bank against Ferguson and Stephens. I was employed by Stephens to defend the case. My impression is I examined the papers before the court convened ; I know I did early in the re turn term of the suit. McAfee and Phelps and I examined the papers at that time ; they represented Ferguson and Stephens. I found that Stephens' property was not attached and no service on him, and I told him (Stephens) to keep out of Dade county. McAfee and Phelps, or one of them, and I talked about it, that there was no affidavit and bond; then I told Estes he had better dismiss my clients, but he went on and took judgment against both, and when the record was read next morning I found a regular attachment judgment entered up. My client was not attached, but the judgment was against both Ferguson and Stephens. I then examined the record and knew all about it, that is the entry read the next morning. I objected to the entry because no attachment, nor service, on my client. Phelps and McAfee objected to judgment against their client because no affidavit or bond, and Ferguson not personally served. Perhaps McAfee filed a motion to that effect, I can't say ; I appeared only as a friend of the court. The next judgment was a general one, and was entered on pages 579 and 580. Joseph Estes was plaintiff's attorney ; he left here in 1868 ; I next learned where he was of his brother who was here ; I have not seen him since 1868. When here he took a good deal of tea, at times very brilliant and at others very morose; he went away very strangely ; he transacted his business here very loosely. I have corresponded with him since he left; I have had a number of talks with defendant about the purchase of this

land; the Fergusons and myself owned the land together. There was an understanding between the Fergusons and myself not to sell unless we were both agreed. The Fergusons lived in Arkansas and defendant had been there to see them about buying their land. He told me that he could not trade for the land himself, but that he had got Burnett to trade them a piece of land Burnett had in Arkansas, and McCluey was to pay $800 or $900 for his lands in, say six months, and he, McCluey, wanted to buy my interest in the lands.

On cross-examination he further testified; I informed defendant say one and a half or two years ago, of Estes' whereabouts. It was before Jo Estes' deposition was taken the first time in this case. After Burnett bought out the heirs, he, Burnett, denied my title to one heir's share, and hence, I didn't own half. We, McCluey and I, were wrangling with Burnett about his title, and I think it was after this suit was commenced I did secure Estes' first deposition in this case, which deposition I understand to have been suppressed. That deposition was to prove from Estes whether an attachment, affidavit and bond was filed in the suit of the Bank against Ferguson and Stephens. I got the deposition and paid my money for it, $25.00, and have not got it back.

Q. Did you not write a letter to Estes inquiring of him if he did not file affidavit and bond for an attachment in the Bank suit against Ferguson and Stephens, and in that letter did you not use the following words, to-wit: It is a purely jurisdictional question? Ans. I may have used those words; I would not say that I did not. A letter being handed to witness he further testified as follows, to-wit: I wrote this letter; I might have used the words, "It is a purely jurisdictional question." I am not sure but I did act in a double capacity; perhaps I agreed to assist McCluey against Burnett. The time McCluey came to me at Carthage was the day I entered into a written contract as to his purchase of my Ferguson lands. The controversy

between McCluey and me against Burnett, was not long after McCluey's contract with me. I counseled McCluey to hold possession of the land against Burnett. When Burnett conceded I owned one half I tried to get them to settle it and divide the lands between them.

Redirect : I don't know whether Estes, when he took the judgment, had the affidavit or bond in his hands ; there were then no such papers in the roll ; I did not see Estes have them ; I could not say anything about that.

C. B. McAfee testified: I knew of the Bank case against Ferguson and Stephens ; I examined the papers before any judgment was taken ; I didn't find any affidavit for attachment, but found affidavit of non-residence and affidavit to petition, such as was used in order of publication cases in those days ; also a writ of attachment was there, when a judgment was taken in the case ; I don't recollect the reading of the record, but when judgment was entered at reading, or soon after, I noticed it was a special judgment against Ferguson's land. I called the judge's attention to it, and said I had been employed by Ferguson, and having made the examination, I had made no appearance to the suit ; and asked if I might, as a friend of the court, appear for the purpose of moving to set aside the judgment. He readily granted it, and I prepared such a motion, I think, to quash the writ of attachment, but of that I am not certain. When I had got so far along and motion prepared and handed to the judge, I understood the judgment was set aside. I handed the motion to the clerk. Judge Price told Estes to prepare such a judgment as he wanted and hand it to Capt. McAfee; and he did so and I was satisfied. I have no recollection of examining the record afterward. I have no recollection of ever seeing the judgment on record, or ever seeing the record afterward. The judgment Estes prepared was a general judgment on an order of publication and no attachment. My reason for changing the judgment was that there was no affidavit and bond, and I presume I put that in my motion, and I sup-

posed the judgment was set aside, and I didn't pay so much attention as I might, because it was so easy a going thing. I had the roll. I can't tell whether Estes had any affidavit or bond. I don't think he had, because that was the very question.

Q. In what order and condition were the court papers kept in the office of the clerk of this court in 1865 and thereabouts? Ans. In a very loose and careless order.

The deposition of Joseph Estes, on behalf of defendant, was as follows: I was the attorney of the Merchant's Bank of St. Louis, for Dade county, and as such I brought an attachment suit for said bank against John N. Ferguson, Marshal G. Stephens and others, on a bill of exchange for $400, in the circuit court of Dade county, Missouri, returnable to the fall term, 1865. I drew and filed the petition, bond and affidavit in said suit. These papers were drawn in the usual statutory form. I made the affidavit for said bank in said suit, which affidavit, among other things, charged the defendants, Ferguson and Stephens, with having absented themselves from their usual places of abode, so that the ordinary service of law could not be had upon them—or words to that effect copied from the statutory form. I drew and signed said affidavit, and was sworn to the same by the clerk of the circuit court of Dade county. The bond was signed by myself as attorney for the bank and by R. S. Jacobs of Greenfield, Dade county, and was approved by said clerk. When I had filed the petition, bond and affidavit the clerk of the circuit court of Dade county issued a writ of attachment against said defendants, which writ was directed to the sheriff of Dade county, and was by him levied upon the real estate of Ferguson; situate in said county. There was no defense made to the suit; and as attorney for plaintiff, I asked and obtained a judgment in attachment against the defendant in said suit. At the succeeding term of the court, after the judgment was rendered, the said real estate of said Fergu-

son was sold by the sheriff of Dade county to satisfy said judgment, and Robert McCluey became the purchaser.

Q. Who was clerk of the circuit court of Dade county when you brought this suit? A. Benjamin Appleby was clerk, and Nelson McDowell, deputy.

Q. Were the petition, bond and affidavit fastened together when you filed them? A. I think not. It was my custom to draw my attachment suits on separate pieces of paper and hand them to the clerk to be fastened together.

Q. Have you ever seen the papers since you filed them? A. Only once that I remember; I had the petition, bond, affidavit and order of publication in my hands at the time I took the judgment; I then returned them to the clerk, and have not seen them since.

Q. Did you ever bring any other suits against the defendants, Ferguson and Stephens? A. I did not.

Q. Did you ever ask the court to set áside the judgment in said suit and grant the plaintiff a general judgment. A. I did not. I demanded and obtained a judgment in attachment, and I depended in this case (as in all others) on the clerk entering up the judgment in proper form. I never knew until quite recently—that is to say since the year 1877—that any other entry but the original entry of a judgment in attachment had been made in this suit.

Q. Did the Bank instruct you to bring suit by at-tachment? A. The Bank ordered me to bring all her suits by attachment, where defendants were non-residents.

*N. Gibbs* for appellant.

*J. C. Cravens* for respondent.

HOUGH, C. J.—This is an action of ejectment for an undivided half of the south half of the northwest quarter and the north half of the southwest quarter, and the southwest

quarter of the southwest quarter of section 6, township 32, range 28, and the east half of the southeast quarter, and the south half of the northeast quarter of section 1, township 32, range 29, in the county of Dade. John N. Ferguson is the common source of title. Plaintiff claims title under a deed from the heirs of Ferguson, containing the following description : " Southwest quarter of section No. ten (10), township No. thirty-one (31), range twenty-eight (28); also an undivided half of the following, to-wit: South half of the northwest quarter, and north half of the southwest quarter – the southwest quarter of section 6, township 32 of range 28, and also the east half of the southeast quarter and south half of the northeast quarter of section 1, township 32 of range 29, containing 340 acres, more or less."

The acknowledgment of this deed is as follows :

STATE OF ARKANSAS, } ss.
County of Benton, }

On the 19th day of January, 1875, before John Black, clerk of the circuit court of Benton county, Arkansas, personally appeared Charlotte E. Ferguson, William H. Ferguson, B. V. Ferguson, Robert K. Ferguson, Raphael W. Hansard, Sarah C. Hansard, his wife, John K. Putnam and Alice C. Putnam, his wife, of the county of Benton and state aforesaid, to me well known as the persons whose names appear as grantors in the foregoing deed of conveyance, and stated that they had executed the same for the consideration and purposes therein set forth, and I do hereby so certify, and I further certify that upon an examination of Sarah C. Hansard, wife of R. W. Hansard, Alice C. Putnam, wife of J. K. Putnam, separate and apart from their said husbands, acknowledged that they had of their own free will signed and sealed the relinquishment of dower for the purposes herein contained and set forth, without compulsion or undue influence of their said husbands.

In testimony whereof, I have hereunto set my

[SEAL.] hand and affixed the seal of said court, at office in Bentonville, Benton county, Arkansas, this 19th day of January, 1875.

JOHN BLACK, Clerk.

The defendant objected to the introduction of this deed in evidence for the reason that there had been a material alteration therein since its delivery to plaintiff, and since it was recorded, and also because the certificate of acknowledgment of Sarah C. Hansard and Alice C. Putnam does not conform to the requirements of the statute and is insufficient. The alteration complained of consisted in the erasure of the word "of" from the description above quoted, where the hyphen appears between the word "quarter" and the word "the;" said erasure being visible on inspection. A certified copy of said deed was introduced in evidence by the defendant which contained the word "of" at the place above designated by the hyphen. Oral testimony was introduced by the plaintiff, tending to show that said alteration was not made after the delivery of the deed

The defendant claimed title under a sheriff's deed made in pursuance of a sale in a certain attachment proceeding against said John N. Ferguson, the common source of title, and one Marshall G. Stephens. The plaintiff introduced in evidence the record and original papers in said attachment proceeding, from which it appeared that the defendant Ferguson was a non-resident of the state and did not appear to the action. An affidavit of the non-residence of the defendants appeared among the files, but no affidavit for an attachment. Oral testimony was introduced by the plaintiff, tending to show that no affidavit for attachment was ever made in said cause, and similar testimony was introduced by the defendant tending to show that an affidavit for attachment had been made in said cause and was lost.

There was testimony tending to show that the defendant told the plaintiff that he had lost the land in contro-

versy in a suit with one Bray, and that he advised the plaintiff to purchase the title from the Ferguson heirs, as he himself could not effect a trade with them, and that plaintiff did so purchase as advised, but the judgment of the court, as will be seen from an instruction given at the instance of the defendant, was not based upon this testimony.

The court gave the following declarations of law at the request of the plaintiff:

1. That it is admitted in testimony that John N. Ferguson is the common source of title to the land described in plaintiff's petition; that John N. Ferguson died in the year 1868, and plaintiff's grantors Charlotte E. Ferguson, the wife of John N. Ferguson deceased, and Arthur Ferguson, B. V. Ferguson, Alice Putnam, Sarah Hansard, William N. Ferguson, R. K. Ferguson are the children and heirs at law of said John N. Ferguson deceased.

2. That although the court may believe from inspection of the original deed from the Ferguson heirs to John Burnett, that there has been an erasure in said deed, the law presumes the erasure was made before the execution of the deed, and the burden of proof is on defendant to show, by competent testimony, that the erasure was made since the execution of the deed.

4. That the judgment in the case of the Merchants Bank of St. Louis against John N. Ferguson and Marshall G. Stephens upon which the deed offered in evidence by defendant rests, is void, and said deed passes no title.

5. That if the court believes from the testimony, that defendant, previous to the purchase of the title of the Ferguson heirs by plaintiff, made statements to plaintiff inconsistent with his (defendant's) title, or induced or advised plaintiff to buy the land in controversy, of the Ferguson heirs, then defendant is estopped from setting up any title, and plaintiff must recover.

6. That if the court believes from the testimony, defendant McCluey advised plaintiff to trade his, plaintiff's,

farm in Arkansas to the Ferguson heirs for the land in controversy, and that the plaintiff did so trade, believing that the defendant had no claim to said land from defendant's statements, advice and conduct, then defendant is estopped from setting any claim to said land.

7. The court declares the law to be, that if the court shall believe from the testimony that defendant McCluey made such statements to plaintiff as would lead plaintiff to believe he, McCluey, had given up his claim to the land in controversy, and plaintiff was induced to purchase said land, by representations to plaintiff by defendant McCluey, that he plaintiff, could make money by buying or trading for said land, and that plaintiff did so buy, or trade for said land, relying on said statements, then defendant is estopped from setting up any claim to the same.

The court, on motion of defendant, gave the following declarations of law:

2. In an ejectment suit where there is in issue the validity of a sheriff's sale of lands under a final judgment rendered by a court of original and general jurisdiction, and the rights of an innocent purchaser are at stake, the judgment under and by which said sale was had, cannot be impeached or proven void by oral testimony; such judgment can only be proven void in such a suit by the roll and record itself.

3. Oral testimony, to avoid a final judgment of a court of original and general jurisdiction, can only be used in a direct proceeding to set aside such judgment, and then only when the rights of innocent purchasers have not intervened.

4. A final judgment of a court of original and general jurisdiction, when used, or called in question in a collateral proceeding imports, and is, absolute verity, and can only be contradicted and invalidated by the roll and record itself.

5. A person claiming title to lands does not forfeit his right by attempting to buy in a conflicting claim.

6.   The fact of the defendant's going to Arkansas to buy out the claim of Ferguson's heirs to the land in contro-versy, while he was in possession of those lands, and de-fending an ejectment suit then pending in this court against him for those lands, which suit was brought for or by his heirs, and his acts, in attempting to so buy, do not forfeit or prejudice his right to defend or assert the right, title and claim which he had prior to his attempt to so buy out said heirs, against another person, who thereafter, and while such suit was pending, bought the interest of said heirs in those lands, and took their quit-claim deed only to such lands.

7.   The doctrine of estoppel can only be invoked by a person whose conduct in the whole transaction shows the utmost good faith.

11.   The testimony in this case is not sufficient to es-tablish an estoppel on behalf of plaintiff.

13.   The two instruments in writing read in evidence by plaintiff, and under which he claims title, only purport-ing to be deeds of remise, release and quit-claim, and plaintiff being the pretended purchaser in said instruments, and the defendant being then in possession, plaintiff cannot claim to be an innocent purchaser, for a valuable consideration, and without notice of defendant's rights or claims.

14.   It being admitted by the parties to this suit, that at the time plaintiff claims to have purchased the lands in controversy from the widow and heirs of John N. Fergu-son, deceased, defendant was in possession of said lands, and an action of ejectment was then pending in this court, against him for said lands, in which ejectment suit said heirs were plaintiffs and were claiming three-fifths of the said lands, and the deeds which plaintiff received from said heirs, and under which he claims, being but deeds of remise, release and quit-claim, plaintiff took under said quit-claim deed only what said heirs could lawfully remise, release and quit-claim, and plaintiff did not thereby acquire any right superior to the right which they had.

19. The instrument read in evidence by plaintiff, and purporting to be a quit-claim deed, and purporting to have been executed by Charlotte E. Ferguson, B. V. Ferguson, Alice C. Putnam, and J. K. Putnam, her husband, Sarah C. Hansard, and Raphael W. Hansard, her husband, William H. Ferguson and Antha Ferguson, his wife, and Robert K. Ferguson to plaintiff, John Burnett, on the 29th day of January, 1877, and purporting to remise, release and quit-claim to plaintiff the lands in controversy, having been executed after the commencement of this suit, will not sustain plaintiff's right to recover in this action, and plaintiff cannot base his right of recovery on this instrument.

24. In order to recover in an action of ejectment, the plaintiff must show title in himself to the lands in question at the institution of the suit.

27. An estoppel is a purely equitable defense, and plaintiff must do equity to defendant before he can claim equity.

28. A deed only takes effect from its delivery.

It is unnecessary to transcribe here the declarations of law asked by the defendant and refused by the court, as all the material errors committed by the court are indicated in this opinion. There was a finding and judgment for the plaintiff for the land described in the petition.

In the second instruction given at the instance of the plaintiff, the court correctly declared the law in regard to the erasure in the deed under which the plaintiff claims title. *McCormick v. Fitzmorris*, 39 Mo. 24. And it is manifest from the judgment rendered, that the court found from the testimony before it, that the erasure in question was made before the delivery of the deed. As there is testimony to support the finding of the court, this court will not undertake to weigh the evidence.

1. DEED: erasure: presumption.

And even though the circuit court had found that the erasure had been made after delivery, and that such erasure was not a spoliation, but had been fraud-

2. ——: ——.

ulently made by the grantee, still, under the decision of this court in *Woods v. Hilderbrand*, 46 Mo. 284, the deed would have been admissible as evidence of title to the tracts thereby conveyed, in the description of which no alteration had occurred. The rule in regard to the alteration of deeds differs from that applicable to negotiable paper.

The fact that no seal or scrawl was affixed to the names of three of the parties to said deed, does not render it in-

3. ——: seal.     operative as to them. The instrument purports to be sealed, and declares that the parties thereto have subscribed their names and affixed their seals. In such case, it has been held by this court, that where any seal has been affixed, such seal or seals, will be presumed to have been adopted by the parties to whose names no seal is affixed. *Lunsford v. La Motte Lead Co.*, 54 Mo. 426.

The certificate of acknowledgment, however, is defective as to Sarah C. Hansard and Alice C. Putnam, part

4. MARRIED WOMAN'S DEED: acknowledgment. owners in fee of the land conveyed, in that it does not state that they were made acquainted with the contents of the deed; nor is there any equivalent statement in said certificate. On the contrary, the certificate recites that on an examination separate and apart from their husbands, they acknowledged that they had of their own free will signed and sealed the relinquishment of their dower in the premises conveyed. If it distinctly appeared that the parties named had been made acquainted with the contents of the deed, the statement that they relinquished their dower would be regarded as surplusage, and would not vitiate the acknowledgment. *Chauvin v. Wagner*, 18 Mo. 531; *Miller v. Powel*, 53 Mo. 252. But where the certificate fails to state that they were made acquainted with the contents of the deed, the statement that they relinquished their dower would seem to exclude any implication or inference that they were cognizant of the contents and effect of the deed. The certificate of acknowledgment being defective as to Mrs. Hansard and Mrs.

Putnam, the judgment is necessarily erroneous to the extent of their interests in the land.

The deed from the sheriff to the defendant offered in evidence by him, and under which he claims title to the 5. SHERIFF'S DEED: land in controversy, presents the same ques-
attachment: evi-
dence. tion which was considered by this court in the case of *Bray v. McClury*, 55 Mo. 128, where apparently the same deed was held to be void because it was made under certain attachment proceedings without an affidavit therefor. We say apparently, because we cannot take judicial notice of the fact that the deeds are identical and there is no plea of *res judicata* in this case, nor could there be when the defendant pleaded not guilty, nor was the adjudication in that case offered in evidence, as it might have been, to rebut the defendant's claim of title under said deed. The opinion of Judge Adams in the case of *Bray v. McClury*, 55 Mo. 128, was expressly re-affirmed by this court in the case of *Hargadine v. Van Horn*, 72 Mo. 370, and adhearing to the rule announced in those cases, the deed of the sheriff under which the defendant claims title, must, on the record and files in the attachment proceeding now before us, be held to be void. As to the right to look at the files, *vide*, also *Abbott v. Sheppard*, 44 Mo. 273 ; *Howard v. Thornton*, 50 Mo. 291 ; *Clark v. Thompson*, 47 Ill. 25 ; 67 Ill. 212 ; *Kane v. McCown*, 55 Mo. 181, *loc. cit.* 200 ; *Lenox v. Clarke*, 52 Mo. 115. There was no finding by the court that the writ of attachment was duly issued.

In the case now before us, however, as has already been stated, parol testimony was resorted to by plaintiff, to show that there was no affidavit for attachment, and by the defendant to show that an affidavit for attachment was filed by the attorney for the plaintiff in the proceeding referred to, and had been lost. We think the court erred in permitting the plaintiff in the first instance, to introduce evidence that no affidavit for attachment had ever been filed. The plaintiff had a right to introduce the original files to

44—78

show that the judgment was a nullity; and when the defendant introduced testimony for the purpose of showing that the files were not complete, and that papers properly belonging in said files which would support the judgment of the court, had been lost or destroyed, the plaintiff might then introduce evidence in rebuttal, going to show that the files were complete and that no such papers as were alleged to be lost, ever existed. *Howard v. Thornton*, 50 Mo. 291; *Gibson v. Vaughan*, 61 Mo. 418; *Parry v. Walser*, 57 Mo. 169.

The court having found that the deed under which plaintiff claims title, was not altered after delivery, and that

6. DEED : description: call for quantity.

finding, for the reasons heretofore stated, being binding upon us, that deed is to be regarded by us as if it were originally written as it now appears, and the question remains whether the description contained in the deed of the land in the southwest quarter of section 6, will support the judgment rendered by the court. The plaintiff claims in his petition with other land, the north half of the southwest quarter, and the southwest quarter of the southwest quarter of section 6. The deed conveys the "north half of the southwest quarter the southwest quarter of section 6." The court rendered judgment for the north half of the southwest quarter, and the southwest quarter of the southwest quarter of section 6. The court evidently regarded the deed as containing a double description, that is, as covering the entire southwest quarter of section 6, which description standing alone, includes of course, the north half of the southwest quarter. If the court properly rejected the words "north half of the north west quarter" as superfluous, then its judgment is right, the interests of Mrs. Hansard and Mrs. Putnam excepted; otherwise its judgment is for too much. The general rule is, that effect should be given, if practicable, to every part of the description. The words the "north half of the southwest quarter the southwest quarter of section 6" cer-

tainly constitute a novel description. It would seem to be highly improbable that a grantor would, under any conceivable circumstances first grant the north half of the south-west quarter, and then by words immediately following grant the entire southwest quarter. *Campbell v. Johnson.* 44 Mo. 247; *loc. cit.* 249, 250.

If the description were 'an abbreviated one and stood thus : " N. 1-2, S. W. 1-4, S. W. 1-4 sec. 6," few persons familiar with the system adopted for the survey and sub-division of lands in the western states, and the abbreviations in use for the designation of such subdivisions, would hesi-tate to construe such description to mean the north half of the southwest quarter of the southwest quarter of section 6. But when such abbreviated descriptions are translated into words, it is usual to insert both the words " of" and " the " after the words and figures designating the subdivis-ions.

After some hesitation we have reached the conclusion that the description under discussion should be held to mean the north half of the southwest quarter of the south-west quarter of section 6 ; and we are aided to this conclu-sion by the call for quantity contained in the deed. 3 Washburn, (3 Ed.) 348. The construction of the descrip-tion contained in the deed which was adopted by the court, gives 220 acres in excess of the number of acres which the deed purports to convey. The construction which we have adopted gives only eighty acres in excess ; and if sections 6 and 1 mentioned in the deed and bordering on the north and west of the township are fractional, as they may be, the construction we have adopted will probably give the exact quantity called for in the deed. If the heirs intended to convey more than our construction gives, the plaintiff will have to take the necessary steps to perfect his title. It necessarily follows that the judgment of the court was for more land in the southwest quarter of section 6 than the plaintiff was entitled to recover—besides being errone-

Burnett v. McCluey.

ous as to the interests of Mrs. Hansard and Mrs. Putnam.

We see no reversible error in the action of the court other than that herein pointed out. The judgment will be reversed and the cause remanded. The other judges concur, except SHERWOOD, J., who dissents.