B. C. EDMUNDS, Respondent, v. MISSOURI ELECTRIC LIGHT & POWER COMPANY, Appellant.

St. Louis Court of Appeals, November 15, 1898.

1. **Landlord and Tenant:** CONTRACT: DEED: RENT: ACTION: PLEADING AND PRACTICE. Where the relation of landlord and tenant is not created by deed but is established by contract, express or implied, the landlord has two remedies against the tenant for nonpayment of rent; *first*, an action on the contract for the rent reserved; *secondly*, an action for the use and occupation of the premises.

2. ———: ———: ———: CONSTRUCTION OF CONTRACT. In the case at bar, the agreement by its terms, created the relation of landlord and tenant between the parties thereto, and the specification of thirty days' notice for its termination was intended merely as a substitute for the provision of the statute prescribing one month's notice before the termination of similar tenancies.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

Judge BIGGS dissents.

GEORGE M. BLOCK for appellant.

Plaintiff elected to sue the defendant for use and occupation. Where the relation of landlord and tenant exists, and is not created by deed, the landlord may elect to sue either on the contract or for use and occupation, but before an action for use and occupation can lie, the relation of landlord and tenant must be found to exist. R. S. Mo. 1889, sec. 6374; Bank v. Aull, 80 Mo. 199; Edmundson v. Kite, 43 Mo. 176; McLaughlin v. Dunn, 45 Mo. App. 645; 12 Am. and Eng. Ency. of Law, p. 756. "In an action for use and occupation the landlord recovers not in rent, but an equivalent for the rent. That is to say, a reasonable satisfaction for the use and occupation of the premises which have been enjoyed under the demise, and the rent fixed by the agreement is only used as a medium of ascertaining the damages." Taylor, Landlord & Tenant [5 Ed.], sec. 635. "The fact that the plaintiff has a good and sufficient title to enable him to maintain ejectment is not sufficient. There must be some agreement, express or implied, between him and defendant and some entry, enjoyment or possession under such agreement." Woods, Landlord & Tenant [2d Ed.], sec. 547. "Nor will the relation of landlord and tenant be inferred from occupation, if the relative positions of parties to each other can, under the circumstances of the case, be referred to any other distinct cause. Taylor, Landlord & Tenant [5 Ed.], sec. 25. But if no rent has been paid, and no concurrent act of the parties or other circumstances exist, from which consent to a tenancy may be inferred on the part of the owner, or if such consent was conditional and has since been forfeited, a tenancy can not arise from mere

occupation.   Taylor, Landlord & Tenant [5 Ed.], sec. 21.   Now I respectfully submit that there is not, within the terms of this agreement a single element of a lease. It does not purport to grant, remise or lease any land or any interest in land.   It simply asserts that defendant, having erected certain poles upon Edmunds' property, Edmunds is for a consideration, and for a period terminable at the will of Edmunds, granting the license to keep and maintain the said three specific poles on said land, and no more.   Said agreement is a license, pure and simple, and I maintain that under that agreement the relation of landlord and tenant never existed between the parties to this suit.   Washburn defines a license as follows:   "A license is an authority to do a particular act or series of acts upon another's land without possessing any estate therein." Washburn on Real Property [3 Ed.], bk. 1, p. 12, chap. 542, sec. 2.   The American and English Encyclopedia of Law defines a license as being "an authority to do a particular act or series of acts upon another's land without possessing any estate therein."   13 Am. and Eng. Ency. of Law, 539.   See, also, Cook v. Stearns, 11 Mass. 533.   And the principle enunciated by me is sustained in the case of Lunsford v. LaMotte Lead Company, 54 Mo. 426.   Perhaps the case most directly in point in regard to the distinction between a license and a lease is the case of Boone v. Stover, 66 Mo. at page 434, where the court says:   "But as the word 'lease' and 'leased premises' are occasionally used in the petition   *   *   *   it is proper to notice the characteristics which distinguish a lease from a license. A lease is defined in Crusier's Digest as a contract for the possession and profits of land and tenements on the one side, and a recompense of rent or other income on the other.   The words 'demise, lease and to farm let' are the proper ones to constitute a lease, but any other

which show the intention of the parties that one shall divest himself of the possession and the other come into it for a certain time, whether they are in the form of a license, covenant or agreement are of themselves sufficient, and will in construction of law, amount to a lease as effectually as if the most proper words had been used for that purpose. 28 Mo. 199. In Washburn on Easements [4 Ed.], star page 6, paragraph 5, it is said: "Whatever right one has in another's land by license may, as a general proposition, be said to be revocable at will by the owner of the land in which it is to be enjoyed." To the same effect see Pitzman v. Boyce, 111 Mo. 393. "And such license is revocable though it be in writing and upon a consideration." Veghte v. Raritan Water Power Co., 4 C. E. Greene, 143; Jackson v. Hull, 4 Johns. 417; Wiseman v. Lucksinger, 84 N. Y. 31. In the case of Pitzman v. Boyce, 111 Mo. 387, Pitzman, without the knowledge or consent of Boyce entered upon the property of Boyce and built a sewer from his property through and under the property of Boyce to obtain drainage from Pitzman's land. After the sewer was constructed Boyce learned the fact, but raised no objection and permitted the use to continue for a number of years. Held by the court that the use by Pitzman of the property of Boyce was merely that of a licensee, and that the license could be revoked at any time. In this case defendant made a similar use of the property of Edmunds, and the only effect of the contract of February 5 was an agreement on the part of Edmunds to continue the license upon a consideration to be paid to him. The agreement of February 5 did not change the relation of the parties, however, further than to put into contractual form and make legal the use which defendant had already as a trespasser made of the lot in question. The contract

specifically states that "whereas the party of the second part is now maintaining said poles  *  *  *  now, therefore, in consideration  *  *  *  the said Edmunds agrees with the party of the second part that it may keep and maintain three poles upon said property." Under the doctrine laid down in Pitzman v. Boyce the use made by defendant of the said property merely made defendant a licensee, and the action by the owner, as shown by the contract of February 5, merely confirmed this in a formal way.

No brief for respondent.

BOND, J.—Plaintiff filed the following petition before a justice:

"Plaintiff for his cause of action states that the defendant is indebted to him in the sum of $50 for rent due for premises fronting 20 feet on east side of Vandeventer Ave., by a depth eastwardly of 340 feet, more or less, between Washington Ave. and Olive street in the city of St. Louis, as per bill herewith, for which sum plaintiff prays judgment."

Attached to which complaint was the following account:

"MISSOURI ELECTRIC LIGHT & POWER Co.,
"To Bernard C. Edmunds, Dr.

"For ten months rent of premises 20 feet front on the east side of Vandeventer avenue, by a depth eastwardly of 340 feet, more or less, between Washington avenue and Olive street, in the City of St. Louis, at $5 a month, $50."

Plaintiff had judgment in the justice court, from which an appeal was taken to the circuit court of the

city of St. Louis, in which court there was a trial *de novo* before the court, a jury having been waived. In the circuit court plaintiff recovered a judgment. It was shown on the trial in the circuit court that prior to February 5, 1896, defendant had used said lots for the location of three of its poles, and at said date agreed with the then owner, H. L. Edmunds, that it might continue the user of said premises, setting forth the consideration and terms thereof in the following language of a contract then made with him: "In consideration of one dollar in hand paid by the party of the second part to the party of the first part, receipt whereof is hereby acknowledged, and the further consideration of a monthly payment of five dollars by the said party of the second part to the said Edmunds, the first payment to be made on the first day of March, 1896, and five dollars upon the first day of each month thereafter, the said H. L. Edmunds, party of the first part, hereby agrees with the party of the second part that it may keep and maintain three poles for wires upon said property until such time as the said H. L. Edmunds may desire to terminate this agreement; but it is further mutually agreed between said parties that before the said Edmunds shall terminate this agreement, and the permission hereby granted to maintain said three poles, that the said Edmunds will give the said party of the second part thirty days' notice in writing of his desire to do so, and the party of the second part agrees that it will, upon receiving said thirty days' notice, remove all of its said poles from the tract of land of the said Edmunds hereinbefore described, and leave the surface of the ground where said poles stood in good and safe condition."

The parties having waived a jury, and the defendant having requested the court to find the facts, the court makes and files its finding of facts as follows:

"That on the fifth day of February, 1896, one H. L. Edmunds and the defendant entered into the following contract of letting (here the court copied in full the said contract of February 5, 1896)."

"That defendant paid said Edmunds the stipulated sum of $5 per month up to and including June 30, 1896, four payments in all. That about June 6, said Edmunds notified defendant in writing to remove its said poles and wires from said land, as provided in said contract, which it failed to do. On or just prior to July 1, 1896, H. L. Edmunds conveyed said land to plaintiff, and defendant recognized him as grantee and paid him the next monthly payment of $5, which was for the month ending July 30th, 1896."

"That on or about the sixth day of July, 1896, plaintiff, as grantee aforesaid, notified defendant to remove its poles and wires from said land within thirty days, which it failed and refused to do, and on or about August 10, 1896, he threatened to forcibly remove them, whereupon defendant instituted suit in the circuit court, city of St. Louis, to restrain and enjoin plaintiff from carrying out his threat. That after the institution of said suit the parties on August 17, 1896, entered into the following stipulation, viz:"

FINDING of facts.

"No. 4467, October Term, 1896, Room 1.

"Missouri Electric Light & Power Company

vs.

"B. C. Edmunds.          Stipulation, August 17, 1896.

"It is hereby stipulated that the above entitled suit may be dismissed at plaintiff's costs, and that defendant will permit plaintiff to remove its wires and

poles within four days from this date, and as full com-
pensation for use of ground from February 5, 1896, to
date, plaintiff to pay defendant $50, and defendant to
waive all damages by reason of injunction.

"(Signed) W. H. THOMPSON,
"Attorney for Plaintiff.
"(Signed) JESSE A. MCDONALD,
"Attorney for Defendant.

"That in pursuance of said stipulation defendant
paid plaintiff the said sum of $50 on August 18, 1896,
and defendant also paid all court costs in said cause."

"And thereafter defendant removed said three poles
about six inches north of the north line of said land,
but left the seven arms on said poles projecting south-
ward over plaintiff's land about four to five feet, on
which arms are carried fourteen wires and there are two
or more wires carried angling across said land from
these poles to the south side of same. That about
June 20, 1897, plaintiff made demand on defendant
for the rent sued for, being for ten months, beginning
August 1, 1896, and ending June 1, 1897, amounting
to $50 which defendant refused to pay."

"Plaintiff claimed that defendant has never sur-
rendered possession of the premises in that its poles
and wires are still occupying a portion of the same;
that it has failed to remove them according to agree-
ment of August 17, 1896, and is therefore still liable
for said monthly payment of $5 per month, and the
court finds that defendant *has not removed its poles and
wires from said land in accordance with said stipulation
of date August 17, 1896. But that at the date of filing
this suit defendant was still* occupying said premises
with its said wires and arms upon said poles
and the court holds as a matter of law that under the
facts found as above, the defendant is liable to plaintiff
for said sum of $5 per month for rent of said premises,

under the terms of said contract of letting of date February 5, 1896, from said seventeenth day of August, 1896, to June 1, 1897, leaving 9 12-30 months and amounting to $47, upon which plaintiff, is entitled to interest at the rate six per cent from June 24, 1897 (the date on which this suit was filed) to the present date, making the sum of $49.05, for which plaintiff is entitled to judgment with his costs.

"This April 5, 1898.

"D. D. FISHER, Judge."

The court rendered a verdict for plaintiff in the sum of $49.05, from which defendant appealed to this court.

The finding of facts made by the learned circuit judge being supported by the evidence, is conclusive as to the issues of fact on this appeal, hence the only questions for review arise out of the proper application of the law to the facts found. Where the relation of landlord and tenant is not created by deed but is established by a contract, express or implied, the landlord has two remedies against the tenant for nonpayment of rent, *first*, an action on the contract for the rent reserved; *secondly*, an action for the use and occupation of the premises. R. S. 1889, sec. 6374; Bank v. Aull, 80 Mo. 199; Edmonson v. Kite, 43 Mo. 176; McLaughlin v. Dunn, 45 Mo. App. 645. We are unable to concur in the view of appellant that the contract of February 5, 1896, entered into by the grantor of plaintiff and the defendant, must be construed as a deed to the latter. The fair interpretation of that agreement merely imports a contract of user of the land described for the location and erection of poles, terminable, by the party of the first part on thirty days' written notice of such intention. In other words, it created the relation of landlord and tenant between the parties thereto, and the

LANDLORD and tenant: contract: deed.

specifications of thirty days' notice for its termination was intended merely as a substitute for the provision of the statute prescribing one month's notice before the termination of similar tenancies. R. S. 1889, sec. 6371. So construing the contract (to the rights under which plaintiff succeeded) the finding of the trial court that defendant never surrendered the possession of the premises which it acquired under said agreement, but continued to occupy the same thereunder up to the filing of suit, involves the conclusion under the authorities cited, that plaintiff is entitled to recover for the use of his premises, either by an action on the contract, or by one for use and occupation. It is immaterial, therefore, whether the present action be in the one form or the other. It is not claimed in the motion for new trial that the amount of the judgment is excessive if defendant is liable in either form of action. Hence that point is not open to review. State ex rel. v. Bank, 144 Mo. 381; Alexander v. Rolfe, 74 Mo. 495; Ray v. Thompson, 26 Mo. App. 431; ibid, 386.

CONTRACT construed.

Finding no reversible error in the judgment, it is affirmed. Judge BLAND concurs; Judge BIGGS dissents.

### DISSENTING OPINION BY JUDGE BIGGS.

The appellant was only a licensee. Boone v. Stover, 66 Mo. loc. cit. 434; 1 Washburn, Real Property, chap. 12, sec. 2, p. 661; Cook v. Stearns, 11 Mass. 533. After the final revocation of the license which was accompanied by the agreement of the parties in the injunction suit, the continued use of the premises by the appellant, if it did use them, constituted it a wrongdoer or trespasser. Lunsford v. LaMotte Lead Company, 54 Mo. 426; Lockwood v. Lunsford, 56 Mo. 68.

As there was no evidence of substantial damage, the plaintiff could only recover nominal damages. The instruction of the appellant to that effect ought to have been given. For the foregoing reasons I can not agree to the opinion of the majority of the court.

OPINION OF JUDGE BIGGS ON MOTION FOR REHEARING.

I think that the motion for rehearing in this case ought to be granted on the ground that the court erred in refusing the instruction asked by the defendant, that under the law and evidence the judgment could only be for a nominal sum.

The action can not be treated as one for use and occupation, and if it could the instruction asked ought to have been given. The statute (R. S. 1889, sec. 6374) is as follows: "A landlord may recover a reasonable satisfaction for the use and occupation of any lands or tenements held by any person under an agreement not made by deed." The majority opinion states that the original contract between H. L. Edmunds and the defendant *was not by deed*, wherefore

EXECUTION of contract under seal.

my associates contend that it was competent for the plaintiff to sue either under the contract or for use and occupation. The contract is not set out in full, and the opinion fails to state the material fact that *it was executed under seal*. Under all of the authorities a sealed instrument is a *deed*, whether it be a conveyance of land, or a bond or a contract of any kind between the parties. This principle is so elementary that it is useless to cite authorities. It is only necessary to consult the law dictionaries. The reason for the statute quoted is, that where parties have entered into a solemn agreement under seal as to the occupation of premises, the landlord will not be allowed to abandon the contract

and sue for use and occupation. On the other hand, if the letting rests in parol, or is evidenced by a simple contract, the action for use and occupation may be maintained. Therefore in my opinion the plaintiff must recover (if at all) under the original contract. There was no evidence introduced by the plaintiff as to the value of that portion of the premises retained by the defendant after the compromise of the injunction suit. He relied solely on the contract as fixing the amount of his recovery. It is undisputed that there was a partial eviction or vacation of the premises at the time the injunction suit was compromised. The poles were removed from the land, but were reset so close to the line that the arms conveying one half of the wires projected over the land. To this extent only did the defendant fail to comply with its agreement to vacate the premises. It is evident that the amount which the defendant agreed to pay for the privilege of maintaining three poles and all the wires on the land can not be accepted as conclusive of the sum that the defendant ought to pay for a partial use. McFadin v. Rippey, 8 Mo. 738. Hence I do not think that proof of what the defendant agreed to pay for a particular occupation was sufficient to enable the plaintiff to the same or a substantial sum for a different occupation. If plaintiff was entitled to anything, it was to a judgment for a nominal sum and no more, as there was no data under the evidence from which a substantial sum could be reckoned. The defendant presented the question by its instruction which the court refused. It excepted to this action of the court and made it one of the grounds in its motion for a new trial. The contention in the brief that the judgment is excessive is based on this exception.

Again, I think that the motion for rehearing ought to be sustained and the action dismissed for the

reasons stated in my dissenting opinion.
Under all of the decisions in this state as
I read and understand them, the contract
between H. L. Edmunds and the defendant created a
license merely, terminable by Edmunds upon thirty
days' notice. The agreement lacks several of the elements of a lease. The defendant being a licensee, its
failure to vacate the premises after the compromise
agreement in the injunction suit, made it a wrongdoer,
hence the plaintiff's cause of action is against the
defendant as a trespasser.

CONTRACT: license.

### OPINION ON MOTION FOR REHEARING.

BOND, J.—When the motion for rehearing in this
case was overruled by the majority of the court, it did
not file any opinion as is the custom when such
motions present nothing new or are otherwise without
merit. One of the judges, however, filed his individual
opinion in favor of sustaining the motion. His opinion
in referring to the opinion of the majority of the court
upon the disposition of the appeal in this case, charges
an omission to set out all the contract sued on, because
it did not notice the fact that a private seal was
attached to the instrument. In referring to such
omission his opinion uses the following language:
"The contract is not set out in full, and the opinion
fails to state the material fact that *it was executed
under seal.* Under all of the authorities a sealed
instrument is a *deed*, whether it be a conveyance of
land or a bond or a contract of any kind between the
parties. This principle is so elementary that it is useless to cite authorities. It is only necessary to consult
the law dictionaries." Volume 1, number 16, page
591, Missouri Appeal Reporter.

The only justification we have to plead is the
following statute: "Section 2388. *Private seals abol-*

*ished.* The use of private seals in written contracts, conveyances of real estate and all other

SEAL abolished. instruments of writing heretofore required by law to be sealed (except the seals of corporations), is hereby abolished, but the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof." Sess. Acts 1893, p. 117.

This act became the law of the state February 21, 1893, or about three years *prior* to the execution of the contract construed in the majority opinion. Under its provisions we were wholly unable to perceive the bearing of the private seal on the *"Character"* or *"Construction"* to be applied to the contract under review. Judge BLAND joins in this opinion.