RADCLIFFE B. LOCKWOOD AND WILLIAM A. SCOTT, Defendants in Error, *vs.* AMOS LUNSFORD, Plaintiff in Error.

1. *Equity—Temporary injunction granted where title to property is in dispute.*—Courts of equity will not usually grant a perpetual injunction, in a case where the title to the premises is put in issue, and where from the evidence the title is in doubt; but will only grant a temporary injunction to restrain the parties until the title can be settled at law. But the Chancellor may hear evidence on this point, notwithstanding.

2. *Injunction against mining by a trespasser who is insolvent.*—It has long been settled that where a mere trespasser digs into and works a mine to the injury of the owner, an injunction will be granted; and more particularly is this true when the trespasser is insolvent.

3. *Mining—License—Trespass.*—One engaged in mining under an agreement with the owners, which by its terms was revocable at any time at their option, holds under a mere license, and by continuing work after its revocation becomes a trespasser. (See Lunsford vs. La Motte Lead Company, 54 Mo., 426.)

*Error to Madison Circuit Court.*

*W. N. Nolle and M. L. Clardy,* for Plaintiff in Error.

I. The holding of defendant was a tenancy for mining, and not a pure tenancy at will. (1 Washb. R. P., 395, § 1, *et seq.* [2nd Ed.]; Kerr vs. Clark, 19 Mo., 132; Williams vs. Deriar, 31 Mo., 15; Tayl. Land. & Ten., 14.) Hence a notice to quit and the fixing of a time when the tenancy would cease were necessary. These acts do not appear to have been done. Therefore, the petition does not show that the plaintiff in error was at any time a trespasser. (2 Wagn. Stat., 879 §§ 12, 13; 1 Washb. R. P., 392, § 35 [2nd Ed.], *id.* 400, § 18; Williams vs. Deriar, *supra, et seq.;* Ridgely, vs. Stillwell, 25 Mo., 570.)

II. If defendants' right was a mere license, it is shown by the proof to have been an established one which carried an interest in the land.

III. Plaintiff's petition shows that he had his remedies at law, in trover, replevin, or covenant of seizin, quiet enjoyment, etc.

IV. The petition creates a reasonable doubt as to the validity of the title, and the answer puts it in issue. Hence, plaintiff should bring his action at law, and the injunctions should be dissolved. (1 Washb. R. P., 126, § 61, [2nd Ed.]; Hackensack Imp. Co. vs. N. J. Midland R. Co., 22 N. J., 94; Walker's Reports, [Miss.,] 176; 1 Howard's Reports, [Miss.,] 108; Nonday vs. Rowe, 19 Vesey, 153, 4 Johns. Chy., 21; Echelcamp vs. Schrader, 45 Mo., 505; Hill. Inj., 21, §§ 35, 36.)

*B. Benson Cahoon,* for Defendants in Error.

I. It is now well settled that where a trespasser digs into and works a mine to the injury of the owner, an injunction will be granted, because it operates a permanent injury to the property as a mine. (See cases cited in 7 Ves., 308; Mitchell vs. Dors, 6 Ves., 147; Smith vs. Collyer, 2 Ves., 90; Grey vs. Duke of Northumberland, 17 Ves. 281; Falmouth [Lord] vs. Inneys, Mosely, 87, 89; 2 Sto. Eq. Jur., § 929.)

II. The rules and regulations, and the register, gave to respondent but a simple license. (Cook vs. Stearns, 11 Mass., 533;

Taylor vs. Waters, 7 Taunt., 374; Mumford vs. Whitney, 15 Wend., 380; Wolfe vs. Frost, 4 Sandf. Ch., 72; Bridges vs. Purcell, 1 Dev. B. L., 496; 3 Kent Com., 452; 1 Washb. R. P., 542; Doolittle vs. Eddy, 7 Barb., 74; Morse vs. Copeland, 2 Gray, 302; Jackson & Sharp Co. vs. The P. W. & B. R. R. Co., 11 Amer. Law Reg. [or the June No. of 1872], p. 380; Wood vs. Leadbitter, 13 M. & W., 838; 1 Washb. R. P., § 3, p. 543; 3 Kent's Com., 452; Tillotson vs. Preston, 7 Johns. Ch., 285.)

*John F. Bush*, for Defendants in Error.

I. Equity interferes by injunction, and restrains tortious and wrongful mining by one person on lands of another, for the purpose of preventing the destruction and preserving the estate. (Thomas vs. Oaksley, 18 Ves., 186; Hanson vs. Gardner, 7 Ves., 305 (notes); Earl Cowper vs. Baker, 17 Ves., 128; Gray vs. Duke of Northumberland, 17 Ves., 281; Mitchel vs. Dors, 6 Ves., 147; 2 Eden Inj., 231–34, and notes; Willard's Eq. Juris., 382; 2 Sto. Eq., 929; James vs. Dixon, 20 Mo., 79; Eckelcamp vs. Schrader, 45 Mo., 505; Weigel vs. Walsh, 45 Mo., 560; Burgess vs. Cattleman, 41 Mo., 480; Merced Mining Co. vs. Fremont, 7 Cal. *supra*, 317.)

II. Lunsford's right was a mere license and subject to revocation. (Houx vs. Seat, 26 Mo., 178; Prince vs. Case, 10 Conn., 375; Ruggles vs. Lessure, 24 Pick., 187; Wood vs. Leadbitter, 13 M. & W., 838; Dean vs. Fuhr, 26 Mo., 116; Bainbridge on Mines, 307; 1 Washb. R. P. 399–401; Hazzleman vs. Putnam, 3 Chandler.) And the alienation of the Mine LaMotte domain, including the "Sulphur Lead" now in controversy, was a revocation of Lunsford's mining license. (1 Washb. R. P., 399–400; Prince vs. Case, 10 Conn., 375; Ruggles vs. Lessure, *supra;* Houx vs. Seat, 26 Mo., 178.)

III. Lunsford was in a state of utter and hopeless insolvency. No action of trespass lay in favor of Lockwood & Scott, who were out of possession. (Reed vs. Price, 30 Mo., 441; Cochran vs. Whitesides, 34 Mo., 417.)

VORIES, Judge, delivered the opinion of the court.

This was a petition for an injunction filed by the plaintiffs against the defendant, for the purpose of restraining the defendant from wrongfully digging and removing certain minerals from the lands claimed to belong to the plaintiffs.

It is charged by the petition, that the plaintiffs are the owners and proprietors of a confirmation grant, and tract of land, lying partly in the county of Madison, and partly in the county of St Francois, State of Missouri; and known as Mine LaMotte; that the grantors, under whom plaintiffs claim title, have had the uninterrupted possession of said land for more than twenty consecutive years; that before and since plaintiffs have come into the possession of said tract of land, the defendant has unlawfully and forcibly had and occupied a small lot of ground about 40 feet square, being a part of said tract of land, (which lot is described in the petition,) known as the "Lunsford Shaft" or "Sulphur Lead;" that said lot of ground is mining or mineral land, the chief and sole value of which consists in the lead ore, and other mineral deposits which said ground contains; that the Mine LaMotte claim or confirmation, of which said lot forms a part, is a large body of land containing extensive deposits of lead and other ores, on which said tract of land, mining for said minerals or ores is carried on under the authority and directions of plaintiffs; that the defendant has no title, either in law or equity, to the said lot or parcel of mineral land, nor has he any right to the possession thereof; that long before the purchase of said Mine LaMotte by plaintiffs, certain rules and regulations were established, by the former owners of said tract, for the purpose of mining in and on the same; the tenor of which was, that parties desiring to work as miners thereon, were required to register their names as miners in a book to be kept by said owners of said land, for that purpose; that after said miners' names were registered, they were permitted to go on said tract and stake off a lot of land 40 feet square, the description of which was to be registered,

when permission was given them to work the same, upon con-
dition that they should deposit with the smelters of ore on
said tract, one-tenth of the mineral mined, for the benefit of
the owners of said tract of land; that among said rules and
conditions there was one, by which said miners were compel-
led to work the ground selected by them, and upon their ceas-
ing to work the same for ten consecutive days, then the li-
cense or permit given them was to cease, and their claim to
be wholly forfeited.

The petition alleged that the license or interest of the min-
ers under said rules were liable to be revoked or terminated
at any time that the owners saw fit, all of which terms and
conditions were well known to the miners; that when notice
was given to defendant by R. F. Fleming, as hereinafter to
be stated, similar notices were given by the same person to
all other miners working on said tract, under said rules at the
same time with the defendant, and that upon receiving said no-
tice all such persons, except defendant, delivered to said own-
ers peaceable possession of their said lots of mineral lands, so
worked out by them; that neither plaintiffs nor those under
whom they claim, have ever leased said premises or lot of
mineral land to defendant, and the only right he ever had in
or to said premises, was a parol license or permission given
him by the former owners of said Mine LaMotte tract, to dig
for ore in the manner and under the rules aforesaid; that
the said lot is unlawfully and forcibly in the possession of de-
fendant; that plaintiffs have not since or before they became
the owners of said Mine LaMotte tract, in any manner given
the defendant, or any other persons, any license or permission
to occupy, work or mine in or on said shaft or lead, known
as the "Lunsford Shaft," or any other part of said tract of
land; that previous to the purchase of said Mine LaMotte
tract of Robert F. Fleming and others, by plaintiffs, due no-
tice in writing was given to defendant, by said Fleming, for
himself and other owners, demanding that he deliver the im-
mediate possession of all mineral grounds worked by him as
aforesaid, and the appurtenances, to the said owners thereof;

Lockwood. et al. v. Lunsford.

that subsequent to this notice, on the 6th day of September, 1861, plaintiffs demanded in writing, of defendant, the possession of said lot before worked by him ; that he refused to deliver or quit the possession or occupation thereof either to said Fleming, or to plaintiffs ; that immediately after said notice by said Fleming, defendant ceased mining operations in said "Lunsford Shaft," but forcibly deprived plaintiffs of the possession thereof, and subsequently, unlawfully commenced to work and mine the same, and now continues to work the same.

The plaintiffs then further charge, that said plaintiff Lockwood, commenced an action of unlawful detainer against the defendant before a justice of the peace, and that he regularly prosecuted said action to final judgment, and recovered a judgment against defendant for the possession of said lot and premises, and costs ; that a writ of restitution was duly issued on said judgment, and placed in the hands of the proper sheriff to be executed ; that said officer refused to execute the writ, and returned the same unexecuted on the 14th day of October, 1869 ; that on the 18th day of October, 1869, defendant, and other persons whose names are unknown, and who were acting for, and in concert with the defendant, unlawfully and forcibly, and against the will of plaintiffs, commenced to mine in and remove ore from said sulphur lead, and are still continuing so to do ; that plaintiffs at said time had and still have the exclusive right to said premises, and to the possession thereof, which was well known to defendant ; that said defendant, and others working under him intended to and will, unless restrained by the order of this court, extract from, and carry away all of the valuable mineral from said "Lunsford Shaft" or "Sulphur Lead," as aforesaid ; that said mineral is of great value, and the land is almost valueless except for the mineral ; that defendant is wholly insolvent, so that a judgment at law would be unavailing, and that great and irreparable injury will be done unless the defendant is restrained therefrom. An injunction is therefore prayed, and a prayer for general relief.

A temporary injunction was issued by the judge of the court in vacation, and a writ issued returnable to the next term of the court at which time the defendant appeared and answered the petition.

The answer denies that plaintiffs are the sole owners of the Mine LaMotte tract or lot in question, and charges that the deed by which plaintiffs derive their title to an undivided part of the lot is void; and the answer puts in issue the whole facts of the petition. The answer then sets up a claim to, and right to occupy said mine, and dig ore from the said "Lunsford Shaft" as aforesaid, by virtue of a license or lease from the former owners of said Mine LaMotte tract, and under rules and regulations promulgated by them, and that by virtue of said license and rules he had a right to take the ore from said mine, &c.

Plaintiffs filed a replication denying all affirmative matters in the answer.

After the issues were thus framed, the defendant filed a motion to dissolve the injunction before granted. This motion assigns a great many reasons for the dissolution of the injunction, amongst which it is stated that the petition does not state facts sufficient to entitle plaintiffs to the relief prayed; that they have a remedy at law, and that the facts set up in the answer, amount to a full defense to the action, &c.

The cause was afterwards taken up, and by the parties submitted to the court for hearing upon the issues joined. The court after hearing the evidence found the facts for the plaintiffs, and rendered a judgment and decree perpetually enjoining defendant from taking ore from the mine in question, &c.

The defendant filed a motion for a new trial, and in arrest of judgment which being severally overruled, he excepted, and has brought the case to this court by writ of error.

The record in this case is a long one, and abounds in objections and exceptions made by the different parties, to various rulings of the court made during the trial of the cause, most of which related to matters not really material to the rights of the parties. It will therefore only be necessary to notice

Lockwood, et al. v. Lunsford.

those objections raised in this court, which go to the merits or the right of action or defense.

The plaintiffs on the trial, after having offered evidence tending to prove possession of the land in those under whom they claimed for more than twenty years, offered in evidence a deed from John A. Weber, Francis L. Valle and John Betton, to John H. Fry, for an undivided part of the title to the tract of land known as Mine LaMotte, the deed being dated Oct. 28, 1868. This deed was objected to, on the ground that its tendency was to prove title to the premises in the plaintiffs, which fact it was contended by the defendant could only be tried by a jury. The plaintiffs also offered in evidence a deed from the said Fry to plaintiffs for the same land, dated March 6, 1869. This deed was also objected to by the defendant on the same ground stated, to the deed from Weber and others, to Fry. This objection was overruled by the court, and this action of the court it is insisted by the defendant was erroneous.

In this case the trial of the issues involved in the case, was submitted by the parties to the court, and in fact it is a case that must have been tried by the court; the court having the right under the statute, to take the opinion of a jury upon any specific question of fact involved. (2 Wag. Stat., 1041, § 13.) But the court was not bound to submit any such question of fact to a jury. It is very true that courts of equity, will not usually grant a perpetual injunction in cases where the title to the premises are put in issue, and where from the evidence in the case the title appears to be in doubt, but will in such cases only make a temporary injunction to restrain the parties until the title can be settled at law. (Echelkamp vs. Schrader, 45 Mo., 505; Storm vs. Mann, 4 John. Ch., 21.) This objection does not however apply as to the admissibility of the evidence, but it is a matter for the consideration of the Chancellor, upon the final determination of the case. (Hicks vs. Michael, 15 Cal., 107.) It may as well be stated here, that from the evidence in the case, and the defense set up and relied on by the defendant, he does not claim

an adverse title, to the title of the plaintiffs, but he only claims a license to work a mine from the grantors of plaintiff, who were always in possession of the land for at least twenty years, until they delivered the possession to the plaintiffs. So that upon the whole case there seems to be no real question as to the title, although the answer denies that the plaintiffs are the sole owners of the land. The real question in the case was as to the defendants' right under a license from the owners to work the mines and extract the ores. The deeds were therefore properly admitted in evidence.

The plaintiffs next offered in evidence, a deed from R. F. Fleming, Administrator, with the will annexed, of Thomas Fleming, deceased, to R. B. Lockwood, dated July 18, 1869; also a deed from Robert F. Fleming, as executor of Thomas F. Fleming deceased, to R. B. Lockwood, dated July 8, 1869, for the same lands or undivided interest therein. Also a deed from R. F. Fleming for himself, and as executor of the will of Thomas Fleming deceased, to R. B. Lockwood, for the same lands. Each and all of these deeds were objected to, because the plaintiffs had failed to show any authority in the executors and administrators named therein, to convey. The objection being overruled the defendant excepted.

Plaintiffs then offered in evidence a deed from R. F. Fleming, C. F. Fleming and thirteen others, purporting to be the widow, heirs and representatives, of Thomas Fleming, deceased, of Philadelphia, and of Thomes Fleming, late of Madison County, Mo., to R. B. Lockwood, dated October 20, 1869. This deed refers to the three last deeds given in evidence, and confirms each of said deeds in express terms, and conveys by quit-claim, the right, title and interest of such heirs, to the grantee in said deeds. This last deed was objected to, on the same ground for which the three last deeds were objected to, and on the ground that it was not shown, that the parties were the heirs of Fleming, as they were represented. The plaintiffs also proved that part of the grantors were the real heirs and representatives of Thomas Fleming, deceased. And the defendant admitted that the title to

Mine LaMotte tract of land, was originally in the said Thomas Fleming, and in Weber, Valle and Betton. The court properly overruled the objection to all and each of the four last, named deeds. The three first, by the provisions of the last, were adopted by the last deed, and made a part of it, and were admissible in evidence as a part of the deed of confirmation of the heirs of Thomas Fleming, deceased, and part of the grantor in said deed, were proved to be the proper children and heirs of Thomas Fleming, deceased, who it is admitted by the defendant was a part owner of the land named. These admissions of the defendant are conclusive as to the title being in the grantees of Fleming's heirs, and the deeds were therefore material and properly admitted in evidence.

It should be stated that by these deeds, the land was conveyed to Lockwood, for the use of himself and Scott. The plaintiffs also offered in evidence the transcript of the proceedings had before a justice of the peace, in which Lockwood was plaintiff, and defendant in this case, was the defendant. The action was an action of unlawful detainer, and in which the plaintiffs had recovered a judgment for the premises named in the petition, &c. This transcript was objected to on several grounds, but the objections were overruled, and the defendant excepted. It is only necessary to say in reference to this transcript, that as I view this case, it was not material to the plaintiff's right of recovery, and could do neither good to the plaintiffs, nor harm to the defendant, as the other facts in the case, are found by the court. The judgment would be just the same without this evidence as with it.

The plaintiffs also introduced evidence tending to prove that they had received the possession of the Mine LaMottte tract of land, from Valle, Weber and Betton, in part, and from Flemings' in part; that they received the possession in March, 1869.

The evidence of the plaintiffs was sufficient to prove all of the main facts stated in the petition. This is not serious-

ly disputed. But the defendant contends that the plaintiffs could not have a perpetual injunction in this case, because they had a remedy at law, and that the facts are not sufficient to authorize any equitable relief. The facts of the case show that the defendant was engaged in unlawfully against the will of plaintiffs, extracting and removing the ore, from a valuable mine belonging to the plaintiffs; that the land was only valuable for the minerals which were being removed; that defendant threatened to continue his work of extracting the mineral from said land, to the great damage and destruction thereof; that defendant was wholly insolvent, so that a judgment at law would be unavailing.

It has for a long time been settled, that where a mere trespasser digs into and works a mine to the injury of the owner, an injunction will be granted, and more particularly so where the trespasser is insolvent, so that an action at law could not avail. (2 Sto. Eq., § 929; More vs. Masini, 32 Cal., 590; Thomas vs. Oakley 18 Vesey, 184; Mercel Mining Co. vs. Fremont, 7 Cal., 317.)

The defendant set up as a defense to this action, that he held the mine out of which he was removing the mineral, by virtue of a lease or license from the grantors of the plaintiffs to him, and that he was not therefore unlawfully removing said mineral from said mine. The whole question as to the defendants' rights under the evidence in the case, was fully considered and passed on by this court, in the case of Lunsford vs. The LaMotte Lead Company, (54 Mo., 426). The facts in that case in reference to the defendants' rights as a miner, and the facts in this case are identical in all of their material features. The same rules regulations, &c., were relied on in each case. In that case we held that under the evidence the defendant was a mere trespasser in working the mines. . We do not propose to re-investigate this whole matter, but simply content ourselves by referring to the opinion in that case. We suppose that the real merits of this case were really settled by that case, except, as to a question of costs.

There seems to be no substantial error in the case. The judgment will therefore be affirmed. Judge Wagner absent. The other judges concur.