ERSKINE, *Appellant*, v. LOEWENSTEIN.

1. **Corporation**: STOCKHOLDER: MOTION FOR EXECUTION: PRACTICE. A motion under the statute, (Wag. Stat., p. 291, ? 13,) by a judgment creditor of a corporation, for execution against a stockholder for an unpaid subscription to its stock, is a substitute for a bill in equity to reach assets in the hands of the stockholder; the refusal of the court to grant the motion is a finding of the issue for the defendant, and the remedy for error of the lower court in that regard is by a motion for a new trial and exception to the action of the court in overruling the latter motion.

2. ——: ——: ——: ——. It is not necessary that the bill of exceptions should show that the creditor excepted to the action of the court in overruling the motion for execution against the stockholder.

3. **Execution against Stockholder**: TRIAL: STATUTE. The statute relating to such execution against a stockholder, contemplates a hearing and determination of the motion by the court, without the intervention of a jury.

4. **Stock**: UNPAID SUBSCRIPTION: PURCHASER. One is not liable to such action by the creditors of a corporation for an unpaid subscription to its stock, who purchased from a former holder for value and without knowing or without inculpatory negligence in not knowing that it was so unpaid for.

5. **Stockholder**: ESTOPPEL. One who voluntarily places himself on the books of a corporation as the owner of its stock, will be estopped to deny his title thereto as against its creditors.

6. **Equity**: PRACTICE IN SUPREME COURT. Even in equity in cases of conflicting evidence, the Supreme Court will defer to the finding of the trial judge.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*C. S. Hayden* for appellant.

This case comes before this court as a non-jury or equity case. The court below passed upon the facts as a court, and not as a jury, and the question is whether the finding was à right finding. The finding of the trial court was not only against the evidence, but was against the weight of the evidence. The question is not how the respondent originally received, but how he afterwards held the stock. But even by the first agreement, a holding other than as collateral was provided for, and this other holding took place. By his own contract with Popper, respondent made himself liable. Independent of any such contract, respondent is liable by estoppel. His course of conduct, his acts and representations fix this liability upon him. *Griswold v. Seligman*, 72 Mo. 110. The respondent did not hold the stock as a purchaser in good faith and for valuable consideration, and cannot shelter himself under the decisions which relate to such parties.

*Rombauer & Goldsmith* for respondent.

The failure of the appellant to except to the action of the court in overruling his motion for execution, is fatal. *Bateson v. Clark*, 37 Mo. 31 ; *City of St. Joseph v. Ensworth*, 65 Mo. 628. The appellant has not made out a case, (1) Because he failed to show by proper evidence that the stock for which certificate No. 28 was issued to Edwards, was a part of that for which certificate No. 22 had been issued to Ashcroft. (2) Because there is no evidence whatsoever that the stock transferred by Popper to Loewenstein was the same for which certificate No. 28 was issued to Edwards. A purchaser or holder of stock who, in good faith, acquires it as full paid, cannot be held liable for amounts which are in fact unpaid thereon, if it was issued or is represented by the corporation to be full paid. *Keystone Bridge Co. v. McCluney*, 8 Mo. App. 496; *Foreman v. Bigelow*, 4 Clif.

508; *Skrainka v. Allen*, 76 Mo. 392; *Brant v. Ehlen*, 59 Mo. 1. The testimony of Edwards as to whether Popper acquired the stock in good faith as full paid, was a mere deduction or inference on his part, and was incompetent. 1 Wharton Ev., §§ 508, 509. The finding of the trial court on the issue is conclusive. *Chapman v. McIlwrath*, 77 Mo. 43. The fact that Loewenstein acquired the stock as full paid, is a sufficient defense.

PHILIPS, C.—Plaintiff, on the 15th day of February, 1876, recovered judgment against the Gravois Railroad Company, a corporation under the laws of this State, for the sum of $5,879.61. On return of execution, *nulla bona*, plaintiff, in 1877, began proceedings in the circuit court of St. Louis county, against the defendant, as a stockholder in said company, to realize his said judgment. This proceeding was discontinued by plaintiff. Afterwards, on the 24th day of January, 1880, he began the present proceeding by motion in the circuit court for the same purpose. There is no question made as to the act of incorporation of said company, and the existence and validity of plaintiff's judgment. The contention is, as to whether the defendant was the owner of unpaid stock in said concern.

The plaintiff's evidence sought to show that 1,000 shares, at $50 a share, of the company's stock, were issued to one Ashcroft; that one Edwards became the holder of 100 shares of this 1,000, which he transferred to one Popper; and that the defendant acquired the same from Popper. He further contends that the company never was paid for said stock, and that all the holders thereof had notice of this fact when they obtained the shares in question. The evidence showed that some time in the fall of 1873 Popper, who was cashier of the bank of Taussig, Gemp & Co., borrowed of the defendant the sum of $2,000 and transferred to him as collateral security for said loan, the said shares of stock. The certificate, therefore, was re-issued in the name of Loewenstein, and so continued in his name on

the books of the company. About six months after the loan of this money, Popper repaid the same to defendant. It seems that at that time the said concern of Taussig, Gemp & Co. was in financial trouble. Whether Popper was involved personally in this embarrassment, does not affirmatively appear in this record. At all events, instead of having Loewenstein retransfer the said stock to him, upon satisfaction of the debt for which it was held, Popper requested defendant to retain the stock in his name and sell it for him. When the first movement was made against defendant, as such stockholder, by plaintiff in 1877, on advice of his counsel, he signed the blank transfer on the back of the certificate and delivered it to Popper, who thereafter held the same; but no transfer thereof from defendant to Popper was made on the books of the company. They continued to show that defendant was the owner. The defendant seeks to explain this omission by showing that the company ceased to do business or have any office, and that the books were taken into legal custody and held by one Harrison, an attorney at law representing claims against the insolvent company. But there was a period intervening between the payment of Loewenstein of the money borrowed by Popper and the dissolution or suspension of business by the company, when defendant might have made such transfer of his stock to Popper. On the contrary he consented to hold it for Popper until he could sell it.

Defendant's evidence tended to show that Popper was an innocent purchaser for value, and that defendant took and held the same, as aforesaid, without any notice that it was not "paid up stock." The circuit court found the issues for defendant and refused the motion. Plaintiff appealed to the court of appeals, where the judgment of the lower court was affirmed. He brings the case here on appeal from the court of appeals.

I. Respondent objects to the consideration, by this court, of any imputed error of the trial court for the rea-

son that the bill of exceptions does not show that plaintiff excepted at the time to the action of the court in overruling the motion for execution against the defendant. We think this is a misapplication of the rule invoked by respondent. That rule applies to motions such as are incidental to the trial of the principal proceeding, and not to a case like this where the motion is the principal proceeding, the foundation of the litigation. This motion takes the place, under the statutory provision, of the suit in equity, at common law, to reach assets in the hands of the stockholder; and, to a certain extent, should be treated as a petition. The refusal of the court to grant the motion is a finding of the issue for the defendant. The remedy for the error of the court in making such finding is by motion for new trial and exception, at the time, to the action of the court in overruling this motion, as was done in this case. A more serious question might be as to whether the motion for the execution should not be preserved in the bill of exceptions in order to make it a part of the record. *London v. King*, 22 Mo. 336; *Corby v. Tracy*, 62 Mo. 515. We will give the appellant the benefit of this mere doubt.

II. Question is also raised by counsel as to whether this case on appeal, should not be treated as a trial at law; and as no questions of law were raised by instructions, the only inquiry here should be, was there any evidence to support the finding of the court? If there was any such evidence, respondent contends, the finding of the trial court on the evidence is conclusive on this court. As above suggested, this proceeding by motion is summary and we are disposed to treat it, in this respect, as a statutory substitute for a bill in equity. The statute, evidently, contemplates a hearing and determination of this motion by the court without the intervention of a jury. *Hensley v. Baker*, 10 Mo. 157, 158.

III. We are disposed on the evidence, to accept as correct the plaintiff's claim that this case should be treated as if it were a proceeding directly against Popper, instead

of Loewenstein. Conceding that so long as defendant held the stock· as collateral security he was a *bona fide* holder for value, and as such would be protected as provided by section 9, p. 301, Wag. Stat.; yet the moment Popper repaid him the principal debt, his rightful custody of the stock ceased, so far as the original contract under which he took it is concerned. After that time he consented to, and did hold it for the benefit of Popper, and to protect him under circumstances of known doubtful integrity. He permitted this stock to remain on the books of the company in his name as the ostensible owner before the world. Having thus voluntarily put himself forward as the apparent owner of this stock in Popper's interest, he should not, as against the creditors of the corporation, be heard to deny his title when sued by such creditor. *Griswold v. Seligman*, 72 Mo. 110. Thus fixing him in the shoes of Popper, the remaining question is, does the evidence satisfactorily demonstrate that Popper is liable? Although this stock may not have been paid for by the party or parties under whom Popper took as purchaser, yet, if he took without notice of that fact, and was a purchaser for value, free from inculpatory negligence in not knowing, he is not liable to this action. *Keystone Bridge Co. v. McCluney*, 8 Mo. App. 497; *Skrainka v. Allen*, 76 Mo. 392. Plaintiff asserts that this stock is a part of the 1,000 shares issued to Ashcroft. The chain of evidence by which it is sought to so connect these shares is not entirely complete under strict rules of evidence. But conceding, for the purpose of this investigation, that plaintiff is right as to the origin of this stock, is his case made out? This Gravois Railroad was a corporation under the statute of this State. As such it was required by the law of its creation to keep, and it did keep, books of record wherein were entered its corporate proceedings. The same logic by which plaintiff's counsel would affix to defendant the ownership of the 100 shares of stock would establish that the 1,000 shares of the Ashcroft stock were paid up in full.

A party desiring to make purchase of stock would be referred to the company's records for evidence. Unless there be some proof of some fact or circumstance *in pais*, brought to Popper's attention before making his purchase, impeaching the integrity of the record, he would have been justified in acting upon its apparent correctness. This record of May the 20th, 1873, contained the following entry :

"The treasurer reported that he had received from Mr. Ashcroft, on May 15th, the sum of $50,000, and in accordance with the resolution of May 9th, had delivered to Mr. Ashcroft 1,000 shares of the paid up stock of the capital stock of this company."

This entry is subscribed to and attested by John V. Hogan, as secretary, and James Edwards, president *pro tem.* The stock record contained the following entry :

"Certificate, No. 22, name James E. Ashcroft, number of shares 1,000, par value, $50,000, amount paid in $50,000."

It is claimed by plaintiff that this certificate No. 22 was cancelled and certificates running from 23 to 34 issued in lieu thereof, of which said Edwards got from Ashcroft certificate No. 28, which is the certificate representing the 100 shares in controversy. If this be true this same stock book contains this entry :

"Certificate, No. 28, name James Edwards, number of shares 100, par value $5,000, amount paid in $5,000."

What fact was developed at the trial to satisfy the mind of the judge that Popper, when he bought from Edwards had any notice that this stock was never paid for by the holder of the certificate? The evidence relied on by plaintiff is that of said Edwards, who stated that : "Mr Popper, of course, knows that the stock was not fully paid stock. That is, paid up on the books. I represented to him that the stock was issued full-paid, but I wouldn't represent to him that I would pay the stock up in full. When I sold stock to Popper I represented to him that the stock was all issued full-paid." Upon what Mr. Edwards

based his conclusion is not stated. This statement is little more than the mere inference of the witness. Witness should state facts and circumstances. It is the province of the court or jury to draw the conclusion. *Sparr v. Wellman*, 11 Mo. 230. The witness, however, went further and informed the court about what he did state to Popper, and we are to infer that, in the opinion of the witness, his statement to Popper was of such a character as should have conveyed to him the idea that the stock, in fact, was not paid for. He said : " I represented to him that the stock was issued full-paid." The further language of the witness : " I would not represent to him that I would pay the stock up in full," is the mere assertion as to what he did not say, and not that he used that expression in negotiating the sale. For it is observable that the witness follows this up with what he did say : " When I sold stock to Popper I represented to him that the stock was all issued full-paid." It may be true, as suggested by the learned counsel, that the expression is susceptible of a double meaning, and might well consist with the fact that the stock was not actually paid for to the company. But, on the other hand, why should such language excite the apprehensions of a gentleman purchasing from Mr. Edwards ? The records of the company, kept under the law, and the auspices of Mr. Edwards, stated that the company "had received from Mr. Ashcroft the sum of $50,000, and in accordance with resolution they had delivered to him 1,000 shares of the paid up stock of the capital stock of this company." Then when a party, as in the case of Popper, went to this same Mr. Edwards to buy stock and was told by him that "the stock was issued full-paid," why should he impute to this language any meaning inconsistent with the personal and official integrity of Edwards ? Why should he or the court infer from this that the officers of the corporation were violating their duty in keeping false and misleading records ? Superadded to this, Mr. Popper testified as follows : " Q. State whether or not it was

sold to you as paid up stock by Mr. Edwards? A. I bought the stock as full paid up stock. Q. Did you know that it was not paid up stock? A. I did not. Q. Had you any knowledge, or information, or any notice of the fact that it was not paid up stock? A. I did not."

Under this state of the evidence we do not feel justified in reversing the conclusion reached by the trial court. The witnesses were before the court and presumably known to the judge. In the matter of the credibility of the witness and the weight to be attached to their statements in a conflict of testimony, this court, even in chancery cases, defers to the more favoring opportunities of the trial judge for determining which way the beam in the scale of justice inclines. *Chouteau v. Allen*, 70 Mo. 336; *Chapman v. McIlwrath*, 77 Mo. 43.

It follows that the judgment of the court of appeals should be affirmed. EWING, C., concurs. MARTIN, C., not sitting. HOUGH, C. J., absent.