## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1899.

---

(*Continued from Volume 80.*)

---

CHICAGO & ALTON RAILROAD COMPANY, Appellant, v. SEBASTIAN W. BRANDAU et ux., Respondents.

### Kansas City Court of Appeals, May 29, 1899.

1. **Easements:** MINES AND MINING: SERVITUDE: MINERAL ESTATE: DAMAGES: INJUNCTION. Servitude of subjacent support exists in favor of the surface land against the mineral estate underneath, and the owner of the land has an absolute right to have the surface supported in its natural state, and damages are recoverable for a failure so to do; but where they would be inadequate to compensate for the injury, the removal of the mineral may be restrained by injunction.

2. **Appellate, Practice:** EQUITY CASE: DEFERRING TO TRIAL COURT. In an equity case the appellate court considers it as if it originated there, but where the testimony below is delivered orally the upper court defers to the facts reached by the trial judge, and if the evidence is conflicting the appellate court defers to the opinion of the trial judge on the facts.

3. **Easements:** MINES AND MINING: RAILROAD TRACK: DAMAGE: IN-JUNCTION. The evidence in this case is reviewed and the appellate court defers to the finding of the trial court on the question as to whether defendant's method of mining threatened to interfere with the surface easement of the plaintiff in such manner as to injure its railroad track and to entitle it to an injunction to restrain mining thereunder.

4. **Injunction:** DAMAGES. The assessment of damages resulting from a temporary injunction is approved.

*Appeal from the Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

F. HOUSTON for appellant.

(1) When there is no adequate remedy at law, although no irreparable injury has been done, equity will restrain a trespass against the right of way of a railroad if it threatens such great injury to property that it would be beyond the power of the trespassers to make compensation therefor, and especially if it endangers the lives of employees operating and passengers traveling on the railroad. If the trespass threatens irreparable mischief, it will be restrained. Even an owner of the minerals can remove them only when he provides a support sufficient to protect the surface from subsiding, and keeps it at its ancient and natural level. R. S. 1889, sec. 5510; Farrar v. Patton, 20 Mo. 81; Burgess v. Kattleman, 41 Mo. 483; Echelkamp v. Schrader, 45 Mo. 505-508; Weigel v. Walsh, 45 Mo. 560-561; Lockwood v. Lunsford, 56 Mo. 68-78; Bank v. Kercheval, 65 Mo. 688; Turner v. Stewart, 78 Mo. 480, 481; Towne v. Bowers, 81 Mo. 491; Railway v. Springfield, 85 Mo. 674; Boeckler v. Railway, 10 Mo. App. 454; Bailey v. Wade, 24 Mo. App. 186; Knapp v. St. Louis, etc., Co., 126 Mo. 26; Pacquet v. Railroad, 18 Ore. 233; Trowbridge v. Brookline, 144 Mass. 129; Jones v. Wagner, 66 Pa. St. 429; Carlin v. Chappel, 101 Pa. St. 348; Williams v. Hay, 120 Pa. St. 485; Livingston v. Livingston, 8 Johns Ch. 497; Marvin v. Mining Co., 14 Am. Rep. 322-327; Horner v. Watson, 21 Am. Rep.

60; Yandes v. Wright, 32 Am. Rep. 112, 113; Carlin v. Chappel, 47 Am. Rep. 723-725; Flannery Case, 6 Vesey 147; 7 Vesey 308; 8 Vesey 90; 3 Pom. Eq. Juris. (1883), secs. 1351, 1356; Jones on Easements (1898), secs. 586-588, 597-599, 600. The right to surface support may be released by apt words, but will not be implied from words which do not necessarily impart it. Jones on Easements, sec. 599. (2) The court erred in dissolving the injunction. On the motion to dissolve, the burden of proof was upon the defendants, the party making the motion, to show their right to mine coal under the right of way. If they failed to do so the injunction should have been granted as prayed. 3 Abb. Prac. 183; 6 Howard, Prac., 211-456.

ROBERTS & ROBERTS for respondents submitted an argument on the facts and the law.

SMITH, P. J.—It is alleged by the plaintiff in its petition that it owns and operates a line of railroad extending through the south half of section 32, township 50, north range 25, west; that its right of way, where it passes through said half section, is of the width of one hundred feet, in the center of which is situate the track of its railroad; that STATEMENT. the defendants were in the possession and control of the abutting lands on both sides of plaintiff's right of way and were engaged in coal mining thereon; that they were opening rooms and making excavations beneath plaintiff's right of way, and were taking coal therefrom by reason of which the plaintiff's roadbed and track had been greatly damaged and would be by further excavations liable at any time to settle and subject plaintiff to interruptions and interferences with the operations of its trains; that it was and would be impossible to foresee when such settling would take place, or how rapidly or how much, so that it would be impossible to provide against the danger of accidents that might be caused thereby to its passengers, employees and

freights while being transported in its cars over its railroad; that the defendants would continue to make such excavations unless restrained, and the damages resulting from such continuance could not be estimated and would be irreparable. The concluding paragraph of the petition was to the effect that as the plaintiff had no adequate remedy at law it prayed that the defendants might be perpetually enjoined from entering into or upon plaintiff's right of way for the purpose of digging or mining coal or making excavations therein or adjoining the plaintiff's right of way in such manner that its right of way be damaged or rendered unsafe thereby, etc.

The answer was a general denial supplemented with an admission that the defendants were in possession of the lands on both sides of the plaintiff's right of way and engaged in excavating coal from beneath such right of way, and an allegation in substance that such excavations had been made with plaintiff's knowledge and acquiesence. There was a paragraph in the answer stating an offer by defendants in the future to leave every alternate fifty feet underneath plaintiff's right of way untouched and to mine every alternate fifty feet, and after such mining to fill the chambers solidly with slate, coupled with an allegation that if defendants mined in that way underneath plaintiff's right of way there would be no danger from settling, etc. There are many superfluous and redundant allegations, both in the petition and answer, to which it is not necessary to allude in order to present the material issues in the case. After a hearing on the motion to dissolve, the court found the issues for the defendants and dismissed the plaintiff's petition.

The plaintiff's right of way over said land amounted to no more than an easement. It was neither alleged in the petition nor shown by the evidence that plaintiff owned the fee in the strip of land embraced in its right of way, nor that its interest therein was not limited to a mere surface right. The

plaintiff nowhere makes claim to any right in the servient estate.   The defendants' right to enjoy the servient estate in the lands abutting on both sides of plaintiff's right of way is expressly admitted by the pleadings.   And their right to excavate and mine coal underneath the plaintiff's right of way is not put in issue by the pleadings.   It may be inferred that the owner of the fee in the lands abutting on both sides of plaintiff's right of way is the owner of the servient estate in the land underlying such way.   It appears from the pleadings that the defendants had been mining under the plaintiff's right of way for six or eight years before the filing of the latter's petition, but by what right does not distinctly appear. If the plaintiff had no interest in the servient estate as is the fact, as has been seen, then what right if any has it to complain of any injury done by the defendants to such servient estate? If the defendants did threaten to excavate and remove the coal from underneath the surface on which was located the plaintiff's right of way, would that be such an injury to the dominant estate as to entitle the plaintiff, the owner thereof, to invoke the injunctive process of the court?

A servitude in favor of subjacent support exists in favor of the surface land against the mineral estate underneath it, in case one owns the surface and another the minerals.   Jones on Easements, sec. 598, and cases there cited in note '5.   And it is further stated by this author in the same section that whenever there has been a separation in the ownership of the mines beneath the surface from the surface, the owner of the latter in the absence of any agreement has an absolute right to have the surface supported precisely as it was in the natural state.   If the owner of the coal undertakes to remove it, as he has an undoubted right to do, and damage results to the surface, either from negligence in conducting his mining operations, or from failure to properly and sufficiently support the surface, or from both causes

EASEMENTS: mines and mining: servitude: mineral estate: damages: injunction.

combined, the surface owner is entitled to compensation for the injury. But it is clear that where the injury to the surface is likely to result in the injury alleged in the plaintiff's petition, an adequate remedy can not be afforded by an action for damages. The damage would be irreparable. If the facts are as alleged in the plaintiff's petition we have no doubt it would be entitled to relief by injunction. R. S., sec. 5510; Burgess v. Kattleman, 41 Mo. 483; Echelkamp v. Schrader, 45 Mo. 505; Weigel v. Walsh, 45 Mo. 560; Lockwood v. Lunsford, 56 Mo. 68; Bank v. Kercheval, 65 Mo. 688; Turner v. Stewart, 78 Mo. 480; Railway v. Springfield, 85 Mo. 674.

The decisive issue in the case is, whether or not the defendants in conducting their mining operations threatened to so negligently and carelessly excavate and remove the subjacent support of the surface of the ground on which plaintiff's right of way is located as to entail upon the plaintiff the injurious consequences alleged in its petition. The trial judge found in favor of the negative of this issue.

When an equity case comes to us for hearing we will, for the most part, consider it as if it had originated here. We will, to a considerable extent, where the testimony is delivered *orally*, as here, and does not appear in form of depositions, defer to the result of the verdict on the facts reached by the trial judge. Lins v. Lenhardt, 127 Mo. 271; Allen v. Logan, 96 Mo. 591. And where the testimony is very conflicting we will likewise defer to the opinion of the trial judge on questions of fact. Erskine v. Lowenstein, 82 Mo. 301. The plaintiff claims that on the testimony the issue should have been found for it.

APPELLATE practice: equity case: deferring to trial court.

The undisputed testimony shows that from the surface of the ground to the top of the mine excavated and opened under plaintiff's right of way it is forty-eight feet; that the

C. & A. R. R. Co. v. Brandau.

formation above the roof of the mine is in part

EASEMENTS: mines and mining: railroad track: damage: injunctions.

comprised of a layer of limestone eighteen feet thick, and one of hard soapstone of similar thickness; that the vein of coal was eighteen inches thick and that in mining it with the slate above and the clay below the entries were required to be driven to a thickness of about four feet from top to bottom. These entries extended under plaintiff's right of way for about one thousand feet; that to afford support for the superincumbent roof, pillars were left untouched at irregular intervals; that the space between the pillars was filled with slate and rock. It seems that the support so left was not sufficient to support the surface, for in both the years 1891 and 1898 the plaintiff's track where it passed over defendants' mine settled five or six inches. The plaintiff's engineer testified that after mining the coal if no supporting pillars were left in the defendants' mines, the plaintiff's track might sink as much as eighteen inches, or to a depth equal to the thickness of the vein of coal removed. One of the defendants testified that he proposed in excavating in the future under plaintiff's track to leave a natural pillar every fifty feet and to solidly pillar up the rooms where coal was to be taken out with block slate, the pillars to be two feet wide and six feet apart in rows, and the slate and rubbish to be put between the pillars; that the pillars so left were to be of the length of one hundred feet and of the thickness of fifty feet, extending across plaintiff's right of way, these pillars to be left fifty feet apart under the plaintiff's right of way. He further testified that he intended to mine this way in the future and that under such conditions the settling of plaintiff's track would be impossible. The concurrent testimony of several experienced miners was that if the defendants in conducting their mining operations would leave the supporting columns indicated in the defendants' testimony, the permanency and stability of the plaintiff's track would not be endangered. There was no evidence introduced which tended in the least to prove that the

defendants intended to continue their mining operations in such a way as to endanger the plaintiff's railway track.

There was testimony adduced which tended to show that it was owing to the insufficient support afforded by the columns left to the roof of the entries and rooms in that part of the defendants' mines underlying the plaintiff's right of way that on two occasions the surface of the ground under the plaintiff's track had sunk a few inches, and from this it seems the plaintiff's inferred that if defendants were permitted to further prosecute their mining operations the stability of the track would be again jeopardized. But this inference was repelled by the showing that the defendants proposed to continue their mining so as not to injure the plaintiff in any way. There was no testimony tending to show that the defendants threatened or proposed to continue their mining operations in such a manner as would interfere with plaintiff's rights.

It appears that after the sinking of the plaintiff's track in 1898 the defendants paid plaintiff the damages occasioned thereby and did no further mining under the plaintiff's right of way between that time and that of the filing of the petition for the injunction. All things considered, it seems to us that the case is one in which we may with much propriety defer to the finding of the learned circuit judge who heard the case. We see no good reason why we should disturb the finding made by him.

The plaintiff objects that the assessment of damages on the dissolution of the injunction was improper. It appears that the defendants were allowed $50 for the INJUNCTION: damages. interference occasioned by the injunction with their mining operations, and a like amount for attorneys' fees. These amounts were quite moderate and were fully justified by the testimony offered in support of the motion. We discover no grounds for complaint on this account.

The judgment will be affirmed. All concur.