Glenn v. Glenn.

---

ALICE GLENN, Appellant, v. JOSEPH GLENN, Respondent.

Kansas City Court of Appeals, March 4, 1901.

1. **Divorce:** DEFINITION: HABITUAL DRUNKARD. A drunkard is one who habitually drinks strong drinks immoderately, one whose habit is to get drunk; and merely being under the influence of intoxicating liquors is not sufficient.

2.———: ABUSING CHILD: PROVIDING FOR WIFE: EVIDENCE. The evidence relating to charges of the husband's absenting himself

Glenn v. Glenn.

from home, abusing his child, failing to support his wife, etc., is reviewed and found insufficient to support the charge.

3. ———: LOATHSOME DISEASE: EVIDENCE. Evidence relating to the communication of a loathsome disease to the plaintiff is found insufficient to support the charge.

4. ———: EVIDENCE: EXPERT: DEFERRING TO TRIAL COURT: PRACTICE. The weight of the evidence of an expert on the question of the character of a disease, in a divorce case, is a question for the trial court, and the appellate court must defer to such opinion.

5. Trial Practice: OBJECTION TO EVIDENCE: DEPOSITION. An objection made to the introduction of certain evidence before the notary taking a deposition, must be called to the attention of the trial court to be reviewed on appeal.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

AFFIRMED.

*Woodson & Warrick, Chas. W. Chase* and *H. J. Latshaw* for appellant.

(1)   Divorce is a legal right and where the facts which entitle a plaintiff to a divorce exist, as they do in the case at bar, it is not a discretionary matter for the court, but mandatory, and it is the duty of the court to grant plaintiff a divorce. Deschodt v. Deschodt, 59 Mo. App. 102, 105; Morris v. Morris, 60 Mo. App. 87.   (2)   In the case at bar the evidence conclusively shows that plaintiff was subjected to the indignities inflicted upon her by defendant, which were calculated to render her condition intolerable for a long period of time commencing shortly after the marriage and continuing up to the time of the commencement of the action herein. And such treatment by the defendant towards the plaintiff entitles

Glenn v. Glenn.

the wife to a divorce.	Brown v. Brown, 53 Mo. App. 453;
Griesedieck v. Griesedieck, 56 Mo. App. 94; Wheeler v.
Wheeler, 63 Mo. App. 298; Tripp v. Tripp, 78 Mo. App. 413;
Stahorn v. Stahorn, 82 Mo. App. 580; Goodman v. Goodman,
80 Mo. App. 274; Ishler v. Ishler, 81 Mo. App. 567.	(3)
This being an equity suit, the appellate court is not bound
by the finding or decree of the trial court, but will draw its
own conclusion upon the record, evidence and proof contained
in the record.	Hoffman v. Hoffman, 43 Mo. 547, 551;
Owen v. Owen, 48 Mo. App. 208, 211; Griesedieck v. Griese-
dieck, 56 Mo. App. 94; Goodman v. Goodman, 80 Mo. App.
274; Ishler v. Ishler, 81 Mo. App. 567; Torlotting v. Tor-
lotting, 82 Mo. App. 192; Stahorn v. Stahorn, 82 Mo. App.
580; Luce v. Barnum, 19 Mo. App. 359; Crawford v. Spencer,
36 Mo. App. 86; Benne v. Schnecko, 100 Mo. 250; Dale v.
Hogan, 39 Mo. App. 646; Waddingham v. Waddingham, 21
Mo. App. 609.	(4)	The vicious, contagious and inflamma-
tory venereal disease contracted by plaintiff from defendant,
is such a loathsome and vile disease as to constitute such
cruel and barbarous treatment as to endanger the life of
plaintiff, and such as would give plaintiff an absolute divorce,
and the case at bar is within the rule and law.	Goodman v.
Goodman, 80 Mo. App. 274.	(5)	The evidence in the
record establishes beyond all controversy the habitual drunken-
ness for one year of the defendant.	Ishler v. Ishler, 81 Mo.
App. 567.	(6)	It is the duty of the husband not only to
support his wife, but to treat her with kindness and affection.
Tripp v. Tripp, 78 Mo. App. 413.	(7)	The letter offered
in evidence over the objection of plaintiff was error.	Brown
v. Brown, 53 Mo. App. 453; Moore v. Moore, 51 Mo. 118;
Berlin v. Berlin, 52 Mo. 151.

*R. W. Quarles* and *Elijah Robinson* for respondent.

Glenn v. Glenn.

(1)   The letter not having been preserved in the bill of exceptions, this court can not consider the question as to whether it was properly admitted.   State v. Mollineaux, 149 Mo. 646; State v. Dawson, 124 Mo. 418; State v. Avery, 113 Mo. 475.   (2)   The only objection made by plaintiff to the admission of the letter mentioned, was that it was "incompetent, irrelevant and immaterial."   This court will not consider an objection of that kind.   Lumber Co. v. Rogers, 145 Mo. 445.   (3)   This court will indulge a presumption in favor of the correctness of the finding of fact of the trial judge.   Parker v. Vanhoozer, 142 Mo. 621; Stevenson v. Stevenson, 29 Mo. 95; Judy v. Bank, 81 Mo. 410; Erskine v. Loewenstein, 82 Mo. 309; Robertson v. Reed, 38 Mo. App. 36; King v. King, 42 Mo. App. 459; Torlotting v. Torlotting, 82 Mo. App. 200. (4)   The weight of evidence was clearly in favor of defendant on every issue in the case, and the trial court could not have decided differently than it did.

BROADDUS, J.—This is a suit for divorce, which was tried on the sixteenth day of April, 1900, judgment rendered on the seventeenth of April, 1900, for the defendant, from which the plaintiff duly appealed.

The amended petition on which the cause was tried alleges:   That plaintiff and defendant were married on the thirty-first day of October, 1889, and lived together as husband and wife until about the first day of October, 1899. After the usual allegations of faithful performance of her duty as a wife, there follow certain allegations that are denominated indignities to the effect: that the defendant has used abusive language toward plaintiff and indulged in cruel and inhuman conduct towards her which has endangered her life; that in the month of January, 1896, he communicated gonorrhoea to her; that defendant was in the habit

of absenting himself from home without apparent reason or cause; that he had, for a year last past, been habitually under the influence of intoxicating drinks; that he would be absent from home for days and weeks at a time without cause or reason and without notifying the plaintiff of his whereabouts; that he would leave plaintiff without money or credit to support herself and child and that in consequence thereof she was compelled to and did rely on the charity of friends and relatives for maintenance of herself and child; that defendant during their married life would take moody and ill-tempered spells, and refuse to have any conversation with plaintiff for weeks at a time, and that when he was compelled by the force of circumstances to talk to her, would use towards her abusive language; that he would not take her out on the public streets or to places of amusement; that he would abuse and ill-treat their child; that he denied herself and child medical treatment and that ever since the thirty-first day of October, 1889, he had wholly neglected his duties as husband and wholly failed to provide for her and her child the common necessaries of life.

Defendant in his answer admits the marriage as stated, the residence of the plaintiff and the birth of the child, but denies everything else in the petition.

Three of the charges against the defendant are of a serious nature, viz.: That he failed to provide his wife and child with the common necessities of life; that he communicated to plaintiff a disease known as gonorrhoea; and that he refused to have medical attendance for them when they were in need of it. The other charges are less serious and many of them are somewhat indefinite. The allegation that he was habitually away from home at late hours of the night is satisfactorily explained by him, as a part of the time he was employed by the city government as sergeant at arms of the com-

mon council, which usually held its meetings at night; sometimes it was late in adjourning, and as his duties compelled him to be in attendance, he was thus kept away from home; and at other times he was in the habit of leaving home after supper and going to the Coates House, spending the evenings there, and that he, did this in order not to annoy Mrs. Hall, in whose house they were living, she having the asthma and disliking tobacco smoke.

The charge, that defendant had for one year last past been under the influence of intoxicating drinks, does not constitute a ground for divorce. The statute in providing what grounds shall be cause for divorce contains one for habitual drunkenness for one year last past. It is not everyone who may be under the influence of intoxicating liquors that is to be classed as a drunkard. A drunkard is: One who habitually drinks strong drinks immoderately; one whose habit is to get drunk. The evidence of the plaintiff and her sister, Miss Kirby, is that they smelled whiskey on his breath and had seen him when they thought he was drunk. But all the defendant's associates say that he was moderate in the use of liquors and that he was never known to be drunk.

Another charge, that he would be gone away from home for days and weeks without sufficient excuse, is met by proof that he was in the employ of the Pittsburg & Gulf Railroad Company in the capacity of assistant claim agent and necessarily had to be away from home much of the time, and when he left home he did not often know where he would be required to go or how long he would have to stay away.

Among other things, he is accused of abusing his child, and in support of the accusation, plaintiff and her sister say that he would blow his breath in her ears and put leaves in them; and that he was in the habit, when the child followed him to the stable, of rubbing the horse's tail in her eyes. These

things were all done in playfulness, yet it is attempted to magnify them into acts of cruelty.   It is going beyond the bounds of credulity to give them serious consideration.

The other minor charges are not well sustained and are denied by the defendant.   It is fully shown that the defendant did provide his wife with the necessaries and even the luxuries of life.   Notwithstanding the plaintiff and Miss Kirby testified that defendant would leave home and stay away without providing for his wife during his absence, in the end each one contradicts herself by unwittingly stating that out of the allowances she received from her husband she saved money enough to attend the World's Fair at Chicago, and to pay a fee to her lawyer in this case.   It is also shown that he bought a horse and buggy for his wife at a cost of $380 and invested $1400 for household furniture, besides, he presented to her a diamond ornament.

The evidence of physicians fully refutes the charge that he neglected his family in sickness or failed to have medical attendance for them when required.   It is proper to state here that defendant had only what he was earning and at no time was his income much more than $100 a month—and sometimes less.   He was successful to some extent and he appeared ambitious to accumulate property.

The most serious charge in the case is that the defendant communicated to the plaintiff a disease known as the gonorrhoea, and it is on this charge that plaintiff most relies for divorce; and it is insisted upon in this court that it was fully proved by the evidence.   It was not admitted on the trial that she had the disease, and it was strenuously denied, that if she did, it was not communicated to her by the defendant.   The plaintiff claims that she was so afflicted for one year before the birth of her child, which at the time of the trial was about three years of age.   She claims that she did not know what

the disease was until after she had filed her original petition, and not until Dr. Sulzbacher, the bacteriologist, had made his microscopic examination. Then she filed her amended petition making this new charge. Plaintiff claims that it was unquestionably proved that she had the disease as alleged, and that as defendant admitted that she was a virtuous female, the inference necessarily follows that the husband communicated it to her. Drs. James and Addoms examined the plaintiff and Dr. James sent a portion of the discharge taken from the vagina to Dr. Sulzbacher who made a microscopic test and reported that he found *gonno cocci* germs, and that it was a case of gonorrhoea.

Dr. Porter, who attended the plaintiff and prescribed for her, testifies that he did not find any indications of a venereal disease. Dr. Freyer who treated her, in the meantime, says he found no indications of gonorrhoea. Dr. Cordier, a specialist in women's diseases, states that he made a careful examination of the plaintiff and "found no evidence of it, neither in tenderness, nor in regard to the character of the discharge or anything of the kind." He says that he looked carefully and saw no evidence of the disease in question. While he says that he would rely much upon the opinion of a bacteriologist he would not accept it as conclusive. The defendant testified that he did not communicate the disease to his wife. It appears there was a conflict in the evidence, both as to whether the plaintiff had the disease and as to whether defendant communicated it to her.

The only evidence that the plaintiff was afflicted with the disease in question is that of Dr. Sulzbacher, the bacteriologist, who testifies as an expert. The court was not bound to accept his evidence as conclusive and to disregard the evidence of Drs. Freyer, Porter and Cordier. The weight of his evidence was a question for the trial court. Thompson v. Ish, 99 Mo. 160;

Parker v. Roberts, 116 Mo. 667.    There was not a single issue in the case on which the evidence was not conflicting.    In cases of this kind, this court must necessarily defer to the opinion of the trial court.    Stevenson v. Stevenson, 29 Mo. 95.    This is also the rule adopted in chancery cases.    Erskine v. Lowenstein, 82 Mo. 301.    And the rule applies to equity and divorce suits alike.    King v. King, 42 Mo. App. 454.

It is also insisted that the court erred in admitting certain evidence offered by the defendant.    Mrs. Glenn's evidence was taken in the form of a deposition before the trial and this was introduced by the defendant.    In said deposition the following question was asked her:    "Q. I hand you that marked 'Exhibit A,' we call it, and ask you if you wrote that to Mr. Glenn?"    "A.    I did."    "Objected to as incompetent, irrelevant and immaterial, and not a proper foundation laid."    This was attached to the deposition but not read.    Plaintiff's attorneys persist in claiming that this was prejudicial and call especial attention to it in their brief, rather compelling our attention.    But the objection does not appear to have been made to the court on the trial, but made before the notary. There could be no harm in it anyway as the letter was not read and therefore could not influence the mind of the court.

We find no error in the case.    Affirmed.    All concur.